Syllabus.

# THE PACIFIC HOTEL COMPANY

*v.*

# HERMAN LIEB *et al.*

1. TAXATION—*capital stock of corporation, what is.* The words "capital stock," as used in the Revenue law with respect to the assessment of corporations, means all the property belonging to a corporation, whether tangible or intangible, and of whatever nature or kind, and it must be valued under this designation for the purpose of taxation. The deduction of tangible property is required merely to avoid double taxation. This being avoided, it matters not whether the balance left entirely represents the value of intangible property, or in part, also, represents tangible property omitted to be assessed.

2. SAME—*listing of capital stock not essential to its taxation.* A listing of the capital stock of a corporation or association created under the laws of this State, including its franchise, either by the corporation, or the local assessor, is not an essential prerequisite to its valuation by the State Board of Equalization, and such valuation, without such listing and returns thereof made, will not render a tax levied thereon void.

3. SAME—*duty of local assessor in regard to capital stock.* The local assessor is not required to fix any valuation on the capital stock of corporations and associations, but the matters required to be returned by him are merely such as the law deems to be important in enabling the State board to discharge its duty intelligently. If such returns are regarded fraudulent or untrustworthy by the board, they may entirely disregard them, and make the valuation from other sources supposed to be more accurate and reliable.

4. SAME—*State board not bound by returns.* The State Board of Equalization, in valuing the capital stock of corporations, over and above the assessed value of its tangible property, is to be governed by "such rules and principles as to it may seem to be equitable and just," instead of being restricted to valuations returned by the local assessor.

5. SAME—*basis of assessing capital stock.* An assessment of the capital stock of a corporation for taxation, by first ascertaining the market or fair cash value of the shares of capital stock, and the market or fair cash value of its debts, exclusive of those for current expenses, and adding these together, and taking from the sum the equalized valuation of all its tangible property, was held proper, as showing the balance of the capital stock over and above the assessed value of the tangible property.

6. SAME—*duty of State board as to property of corporations.* The State Board of Equalization, in assessing the property of corporations, does not act as a board of review, as in respect to other kinds of property, but as an

original assessor. It is made its duty to assess the capital stock of corporations, etc., including their franchises, over and above the value of tangible property, and it will not be excused from doing so by either the neglect of the corporation to list its property, or that of the local assessor in making proper returns, provided it can obtain satisfactory evidence for that purpose, and of this, it is necessarily made the judge.

7. SAME—*assessor's neglect no excuse for corporation.* The law requiring the local assessor to make and return a schedule, where the corporation fails to list its property, is not intended for the benefit of the corporation; and the neglect of the local assessor to do his duty, furnishes no excuse for the negligence of the officers of a corporation. They should make the proper returns to the assessor whether solicited or not, and thus they can be heard through such officer. If this is not done, they may still be heard, on proper application, before the State board.

8. SAME—*constitutionality of State board.* No constitutional mandate is violated in making the State Board of Equalization the exclusive judges of the value of any and all property.

9. SAME—*presumption in favor of assessments by State board.* The members of the State Board of Equalization being public officers, there can be no presumption indulged of their incompetency or wilful dereliction in the discharge of their official duties.

10. SAME—*injunction for excessive valuation.* Owing to the diversity of opinion as to the value of property, it has always been held that a court of equity will not interfere to enjoin the collection of a tax, merely because the property has been assessed at a greater value than the court would have fixed upon it, but if the valuation is so grossly excessive as to furnish evidence of fraud on the part of the officer or body making the same, the court will interpose.

11. A bill by a corporation to enjoin the collection of a tax upon its capital stock, including its franchise, on the ground of an excessive valuation, which does not show the fair cash value of all the property, tangible and intangible, belonging to the corporation, and does not show clearly and distinctly that the aggregate valuation of all its property is so excessive, when compared with the valuation of other property, as to raise the presumption of fraud in the State Board of Equalization in making the assessment, presents no case for the intervention of a court of equity. General assertions and statements, and legal conclusions to that effect, without giving the necessary data and facts, are insufficient. The bill must state facts clearly and distinctly sufficient to show fraud in the assessment, and these must be sustained by proof.

12. The fact that the shares of stock in a corporation are worthless, is not sufficient to impeach an assessment of its capital stock, as it may be in consequence of its debts. In that case, the creditors take the place of the stockholders as to the corporate property assessed.

13. Same—*mode of assessment immaterial to validity of tax.* Under section 280 of the Revenue law, no objection can be made to the *mode* in which an assessment for taxation is made. If the property assessed is subject to taxation, and is assessed no more than its ratable share of taxes, it matters not whether the assessment was made in the mode pointed out by statute or not.

Appeal from the Circuit Court of Cook county; the Hon. E. S. Williams, Judge, presiding.

Mr. Thomas F. Witherow, for the appellant.

Mr. James K. Edsall, Attorney General, for the appellees.

Mr. Justice Scholfield delivered the opinion of the Court:

The bill, in the present case, prays that the collection of all taxes levied upon the capital stock of The Pacific Hotel Company, as assessed by the board of equalization, be enjoined. The court below sustained a demurrer to the bill, and the questions to be determined arise upon that ruling.

By § 32 of the Revenue act, in force July 1, 1872, it is required that "companies and associations incorporated under the laws of this State, (other than banks organized under the general banking laws of this State,) shall, in addition to the other property required by this act to be listed, make out and deliver to the assessor a sworn statement of the amount of its capital stock, setting forth, particularly—

1st. The name and location of the company or association.

2d. The amount of capital stock authorized, and the number of shares into which such capital stock is divided.

3d. The amount of capital stock paid up.

4th. The market value, or if no market value, then the actual value of the shares of stock.

5th. The total amount of all indebtedness, except the indebtedness for current expenses, excluding from such expenses the amount paid for the purchase or improvement of property.

6th. The assessed valuation of all its tangible property.

Such schedule shall be made in conformity to such instructions and forms as may be prescribed by the Auditor of Public

Accounts. In all cases of failure or refusal of any person, officer, company or association to make such return or statement, it shall be the duty of the assessor to make such return or statement from the best information which he can obtain.

It is required by § 33, that "such statements shall be scheduled by the assessor, and such schedule, with the statements so scheduled, shall be returned by the assessor to the county clerk. Said clerk shall, at the time he makes his report of assessment, forward to the auditor all such schedules and statements so returned to him. The auditor shall, annually, on the meeting of the State Board of Equalization, lay before said board the schedules and statements herein required to be returned to him; and said board shall value and assess the capital stock of such companies or associations in the manner provided in this act." That is to say, as prescribed by § 3, "to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and above the assessed value of the tangible property of such company or association."

It is alleged that the valuation or assessment of appellant's capital stock is grossly unequal, unfair and oppressive, and was made in fraud of its rights, and that, in listing its property, appellant omitted to list its capital stock, or indebtedness, in addition to its tangible property, for the reason that neither the Auditor of Public Accounts, nor the duly authorized assessor, furnished it with the instructions or forms, in conformity with which such return is required to be made, or made demand for such return.

The point is made, and pressed with much ability and ingenuity, by the counsel for appellant, that this renders the tax levied upon the capital stock absolutely void. Among the cases cited, in support thereof, are *Graves* v. *Bowen et al.* 11 Ill. 439; *Tibbits* v. *Job et al.* id. 460; *Schuyler et al.* v. *Hull,* id. 463; *Marsh* v. *Chestnut,* 14 id. 223; *Billings* v. *Dutton,* 15 id. 218.

In our opinion, there is a material difference between the returns required by the statutes in those cases, and that re-

quired by the section under consideration, and, therefore, the principle controlling in them has no necessary application ·here.

In the cases in 11 Illinois, the listing included the valuation of the property upon which the rate per cent of taxation levied had to be computed and extended for collection, and so, without the return, there was nothing by which to ascertain the amount the tax-payer should pay, there being no authority to determine it otherwise than upon computation based upon such valuation. In the last two cited cases, the listing also included the valuation, and it was, in addition, essential that the return should be made within the time prescribed by the statute, to allow the tax-payer an opportunity to inspect the return and prepare for the hearing of his objections to the assessment. Here, however, there is no necessity of listing, for the purpose of indicating with certainty the particular property to be assessed, for this is indicated by the law with such certainty, that there can be no possible misapprehension. It is the capital·stock, including the franchise, over and above the assessed value of the tangible property. Where such a company is created by the laws of this State, it possesses this property, of some value, although it may be only nominal, and it can possess no other property with which it may be in danger of being confounded, unless it shall be separately and specifically mentioned. The officers of the corporation can but, and must, know that it possesses this property which is to be taxed, since it is an inseparable incident to corporate existence.

The State Board of Equalization, in assessing this class of property, does not act as a board of review, as it does with respect to other kinds of property, but as an original assessor. The law makes it its duty, not to assess the capital stock of corporations whereof returns shall be laid before it by the auditor, but its language is: "The capital stock of all companies and associations now or hereafter created under the laws of this State, shall be so valued by the State Board of Equalization as to ascertain and determine, respectively, the fair cash value of such capital stock, including the franchise, over and

above the assessed value of the tangible property of such company or association." And to that end it is empowered to "adopt such rules and principles for ascertaining the fair cash value of such capital stock, as to it may seem equitable and just." § 3, clause 4.

Jurisdiction to make the valuation, therefore, is conferred, in *all* cases where the company or association is created under the laws of this State, and, in making it, the board is to be governed by "such rules and principles as to it may seem to be equitable and just," instead of being restricted to valuations returned by the local assessors, and laid before it by the auditor. The local assessor is not required to fix any valuation, and the matters to be returned by him are merely such as the law presumes to be important in enabling the board of equalization to discharge its duty intelligibly. Manifestly, such returns might, if deemed fraudulent or untrustworthy, be entirely disregarded, and the valuations be made from other sources of information supposed to be more accurate and reliable, for, otherwise, it is impossible the board can, in all cases, act with that freedom in determining what is "equitable and just," contemplated by the statute. In our opinion, neither the neglect of the local assessor nor that of the corporation, nor both, can excuse the board of equalization from its duty to value the capital stock of *all* companies and associations created under the laws of this State, provided it can otherwise get satisfactory information for that purpose; and of this, from the nature of its organization, it must, necessarily, be the judge.

Presumptions of incompetency and of wilful dereliction in the discharge of official duty, are no more to be indulged against members of a board of equalization than against local assessors, and whether there should, as a matter of policy, be many or few checks upon their conduct, is not a question for the courts, since no constitutional mandate is violated in making them the exclusive judges of the value of any or all property, for purposes of taxation.

We do not conceive that the clause requiring the local asses-

sor to make and return the schedule, in the event of the corporation having failed to do so, was intended for the benefit of the corporation. Its privilege was to make the schedule itself, and having failed to do so, must be presumed to have waived its rights in that regard. It could not be that the local assessor should better understand the matters of information thus to be communicated than its officers, and hence his failure to make the returns denies it the use of no evidence which it could not have furnished of itself. Nor do we think the failure of the proper officers to furnish the desired instructions and forms, a sufficient excuse to the corporation for not making its returns, because the duty of the board of equalization is to make the valuation, although there may be no returns. If the corporation desires to be heard through the returns, its officers know when they are to be made and what they are to contain, and they should make them out without being solicited. The auditor and assessor are unquestionably culpable, if the charge be true, in not affording the forms and instructions; but we do not regard such culpability as any excuse for the negligence, in this respect, of the officers of the corporation.

The law gives notice of the time and place of the meeting of the board of equalization. The board sits with open doors, and we can not presume that any evidence presented to it, pertinent to questions which it is its duty to determine, if respectfully presented, and in such form and of such character as to reasonably aid in its deliberations, would be rejected; so, even if, by reason of the alleged misfeasance of the assessor and auditor, it was impossible to reach the board through them, the opportunity of a hearing was not denied.

There is, also, another ground upon which the failure to make the returns can not be regarded as material.

It is provided by § 280 of the Revenue law: "No assessment of real or personal property, or charge for taxes thereon, shall be considered illegal on account of any informality in making the assessment." * * * *

If the tax is lawfully levied, and the corporation is assessed

with no more than its ratable portion, it could not, therefore, be objected that the *form* of the assessment was not precisely that prescribed by the statute. It is the result, (the tax being lawful, and the property subject to taxation,)then, and not the mode of reaching it, that may be objected to. But this objection goes to the *mode* of reaching the result only, and, if valid, would defeat a tax in all respects equitable, so far as the property of the corporation liable to be taxed is concerned, as readily as an inequitable levy.

The remaining allegation in the bill to be noticed is, in substance, that while appellant's capital stock was valued, professedly in conformity with the rule which the board had adopted for assessing capital stock, it was valued without evidence of the facts essential to the application of the rule, and at an amount greatly in excess of the valuation that should have been placed upon it.

It has never been supposed a legitimate inquiry for courts of equity to enter upon, whether an assessor in a given case possessed the requisite knowledge and intelligence to make the assessment; and, if the inquiry were allowable, few courts could be found possessing the capacity to define, with unerring precision, the boundaries between that which is barely sufficient, and that which, in the slightest degree, falls below it. Besides, what a party may actually know or think on a given subject, can only be known by others, with any reasonable degree of approximation, by his acts and declarations; and, inasmuch as it is the acts, only, of an assessor, in valuing property, which may be productive of injustice to the tax-payer, courts of equity content themselves with investigating them alone. And, since the value of property is matter of opinion, upon which different minds, with equal opportunities of knowledge, and actuated by the same honest desire to arrive at the truth, are liable widely to differ, it has been always held, in this court, that a court of equity will never interfere to enjoin the collection of a tax, merely because the property has been assessed at a greater valuation than the court would have fixed upon it. Where, however, the valuation is so grossly out of

39—83D ILL.

the way as to show that the assessor could not have been honest in his valuation—must reasonably have known that it was excessive—it is accepted as evidence of a fraud upon his part against the tax-payer, and the court will interpose.

The rule adopted by the board of equalization, which is made an exhibit in the bill, required that there should be ascertained " the market or fair cash value of the shares of capital stock, and the market or fair cash value of the debt, (excluding from such debt the indebtedness for current expenses,) which were to be added together, and from their sum was to be deducted the equalized valuation of the tangible property, leaving the balance, as the capital stock over and above the assessed value of the tangible property."

The words " capital stock," as used in the Revenue law, we have held in *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 565, and in other subsequent cases, where the question has been before us, mean the property belonging to the corporation; and we have also held in those cases that it was designed by the law that all that belongs to the corporation as its property, whether tangible or intangible, and of whatever nature or kind, should be valued, under this designation, for the purpose of taxation. The assessed valuation of the tangible property is deducted to avoid double taxation, and when this is done, the residue apparently represents only the valuation of the intangible property. But this is only apparently so, for, in reality, it may represent also tangible property not represented by the valuation deducted. If there be property belonging to the corporation which adds to the value of the shares of stock, and the value of the debts of the corporation, and which has been omitted in the assessment of the tangible property, it, as well as the intangible property, would be represented in the balance remaining after deducting the assessed value of the tangible property. So, also, this balance might represent an excess over the assessed value of the tangible property, should it be assessed at a less sum than is represented as its value, in connection with the franchise, by means of the value of the shares of stock or the value of the

debts. The double valuation being avoided, however, by the deduction of the assessed valuation of the tangible property, the corporation suffers no injustice whether the balance entirely represents the value of intangible property, or whether it also, in part, represents the value of the tangible property. The object is, to reach the capital stock or property of the corporation as an entirety,—the tangible and intangible values combined—and, unless, when thus considered, it is clearly shown by the bill and sustained by proof, injustice is done the corporation so flagrant as to raise the presumption of fraud in the action of the board, there is no cause for complaint to a court of equity.

The bill, here, is prolific in general and argumentative assertions, and statements of legal conclusions, but it fails to give us the necessary data from which we can certainly see that the valuation of appellant's property is, as it claims, grossly excessive. It is alleged, appellant's franchise is of no value, but this is mere opinion about a matter as to which there may honestly be a wide divergence between different minds; for, to many, the simple advantage to an individual of limiting an investment in a particular business to the amount invested, without risking his other property, which is done by investing in the stock of a corporation, may be of great value.

It is alleged, that the shares of stock are worthless, but this signifies nothing, since it is shown the corporation is largely indebted, and it is not shown what the value of the debts is. If the corporation is indebted to an amount beyond its ability to pay, the shares of stock are of course worth nothing, because there can be nothing coming to the stockholder. But in that event the creditors take the place of the stockholders, and if these debts have value, it is presumptively because there is an equal amount in value of corporate property from which payment can be made.

There is no allegation of what is the fair cash value of all the property, tangible and intangible, belonging to the corporation; nor is it shown, with sufficient clearness and distinctness, that the aggregate valuation of all appellant's property,

tangible and intangible, is so excessive, when compared with the valuations of other property, as to raise the presumption of fraud in the board of equalization in making the assessment.

Other objections have been urged and elaborately discussed, which we have overruled in other cases; and they are not noticed here because we deem their further discussion unnecessary.

The bill failing, in our opinion, to show, with sufficient certainty, that appellant has been fraudulently assessed at too high a valuation—the legality of the tax being unquestioned, and there being no claim that this property is exempt from taxation, there is no cause for the intervention of a court of equity.

On considering the petition for rehearing, which was denied, we thought it advisable to make some changes in the language of the opinion, in nowise affecting the merits of the questions discussed, which we have accordingly done,—and this will be substituted for the former opinion.

The decree is affirmed.

*Decree affirmed.*