THE KEOKUK AND HAMILTON BRIDGE COMPANY

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 30, 1896—Rehearing denied June 4, 1896.*

1. EVIDENCE—*Auditor's certificate of assessment of capital stock controls printed report.* A clerical error or mistake of the printer, in naming the year for which taxes were assessed, in the printed proceedings of the State Board of Equalization, cannot control a correct statement of the year in a certificate of the Auditor which the statute makes evidence of the action of the board.

2. TAXES—*over-valuation does not alone establish fraud in assessment.* The mere fact of over-valuation of property assessed for taxes does not of itself establish fraud or justify a county court in refusing judgment for taxes, when the assessment has been approved by the boards of review provided by law.

3. SAME—*assessment of bridge—cost of construction does not control valuation.* The fair cash value of an inter-State bridge used by railroads as well as by vehicles and foot-passengers, is not necessarily restricted to what would be the present cost of its construction, as it is a property *sui generis* without market value, and the value of which is largely determined by its location, surroundings, and the use that is made of it.

4. SAME—*an unequal assessment, if not fraudulent, is binding.* The assessment of the property of others at a lower proportion of its value than that of a complaining tax-payer, which is not assessed at more than its fair cash value, as required by law, does not make the tax invalid unless the assessment was made fraudulently.

5. SAME—*assessor need not consult experts on value.* An assessor who is by statute required personally and actually to view a bridge to be assessed and determine the fair cash value of it, is not required to consult bridge experts as to its value, when the statute does not require him to seek information from other persons.

APPEAL from the County Court of Hancock county; the Hon. JOHN D. MILLER, Judge, presiding.

G. EDMUNDS, for appellant.

WILLIAM H. HARTZELL, State's Attorney, (SHARP & BERRY BROS., and FRANK HALBOWER, of counsel,) for appellee.

Mr. JUSTICE BAKER delivered the opinion of the court:

This is an appeal by the Keokuk and Hamilton Bridge Company from a judgment for $3203.38, rendered by the county court of Hancock county for the taxes assessed against its property for the year 1893. There are some six assignments of error upon the record, and these will be considered, but not in the order in which they are made.

The second assignment of error, that the court erred in rendering judgment against appellant's property for the personal property (capital stock) tax of 1893, and the fourth assignment of error, that the personal property (capital stock) tax was assessed on the whole capital stock of appellant when only one-half thereof was assessable in this State, may be considered together.

It is claimed that the State Board of Equalization made no assessment of capital stock for the year 1893; that the assessment that it made at its session that be-gan on the 8th day of August, 1893, was for the year 1892, and was a second or double assessment of the capital stock of appellant for the year 1892. The Revenue act (sec. 33) provides that the board of equalization shall, annually, at its meeting that begins on the second Tuesday in August in each year, value and assess the capital stock of bridge and other designated companies or associations in the manner provided in the act; and section 108 provides that the respective assessments so made (other than the capital stock of railroad and telegraph companies) shall be certified by the Auditor of Public Accounts, under direction of said board, to the county clerk of the respective counties in which such companies or associations are located, and said clerk shall extend the taxes for all purposes on the respective amounts so certified, the same as may be levied on the other property in such towns, districts, villages or cities in which such companies or associations are located. At the hearing there was given in evidence by the People the certificate of the Auditor dated October 13, 1893, and under his seal of office, and directed to and received by the clerk of Hancock county. In this certificate it is stated that the State Board of Equalization, at its session begun on the second Tuesday, being the 8th day of August, 1893, assessed the value of the capital stock of the Keokuk and Hamilton Bridge Company, for the year 1893, at $1450. This is the evidence of what was done by the board that the act itself provides for and upon which the clerk is required by the act to extend the taxes. It expressly shows that the assessment was for the year 1893. It would be absurd to suppose that the board, after having assessed the property in 1892 for the taxes of 1892, would again in 1893 assess it for the taxes of 1892 and omit to assess it for the year 1893. It is of no mo-

ment that in the printed pamphlet containing a report of the proceedings of the board, although published by authority of law, the words and figures "for the year 1892" appear instead of the words and figures "for the year 1893." It is manifestly a mere clerical error or mistake of the printer.

The other objection, that the State Board of Equalization assessed the entire capital stock of appellant for taxation in this State, is considered in the case between appellant and appellee involving the taxes levied on the property of appellant for the year 1892, and is there decided adversely to the claim made by appellant. (See *ante*, p. 132.)

The first assignment of error, that the court erred in rendering judgment against the property of appellant upon the assessment of 1893, may be considered in connection with the third, which is as follows: "The court erred in rendering judgment against the property of appellant because the property was assessed at more than its fair cash value, while all other property in the same taxation district was assessed at not exceeding one-third its fair cash value; because said property was fraudulently assessed at more than its fair cash value, while all other property in the assessment district was assessed at not exceeding one-third its fair cash value, for the purpose of compelling appellant to pay more than its fair proportion of taxation."

It seems that the original assessment made by the township assessor of the tangible property of appellant located in this State, for the year 1893, was $85,000. That assessment, over the objections of appellant, was approved by the local board of review, and afterwards, on the appeal of appellant, again approved by the county board of supervisors. Subsequently, however, the assessment was equalized by the State Board of Equalization and the valuation reduced to $82,450. Appellant, then, has had the benefit of the judgment of all the persons

and boards known to our law whose province it is to pass upon the valuation of property for the purposes of assessment for taxation.    Even if its property was assessed more in proportion to its value than other property in the township was assessed, and more than it should have been, yet it is plain there was no authority in the county court, upon the application for judgment, to either grant relief or refuse judgment unless it was made apparent that there was fraud in the making of the assessment. Fraud is never presumed, but must be established by sufficient evidence; and especially could no presumption of fraud be indulged when the action of the assessor has been challenged before each of the two boards of review that the law has provided for revising his assessments, and has met with their approbation.    The mere fact of over-valuation does not, of itself, establish fraud. (*Union Trust Co.* v. *Weber*, 96 Ill. 346; *Keokuk and Hamilton Bridge Co.* v. *People*, 145 id. 596; *Spring Valley Coal Co.* v. *People*, 157 id. 543.)    But the over-valuation may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive.    *Pacific Hotel Co.* v. *Lieb*, 83 Ill. 602; *Spring Valley Coal Co.* v. *People, supra.*

In the case before us, Cole, the superintendent of appellant, testifies that the bridge cost over $500,000, but that it could now be built for about $252,400.    Of course, this latter is but the expression of the opinion of the witness, and an interested witness at that.    The assessor and the boards that reviewed the assessment may well and honestly have been of the opinion that the existing bridge is of a larger value than the sum last mentioned. As we understand the evidence, the bridge, with its approaches, is 3092 feet in length, and of this, 1663¼ feet is in Illinois and 1428¾ feet in Iowa; but the east approach is 700 feet long and the west approach only 200 feet long, and of the bridge proper 265½ more feet are located in Iowa than in Illinois.    It further appears that the bridge

is used both for railroad purposes—the Wabash trains and the Toledo, Peoria and Western trains passing over it—and for horses, wagons and other vehicles, and foot passengers. The fair cash value of the bridge is not' necessarily restricted to what would be the present cost of the material and labor that would be actually used in its construction if it were now being built. The bridge as a bridge,—as a completed structure,—as a property already in actual existence and in actual and profitable use,—has a value other than the total of the values of the earth work, masonry, iron, timber, lumber and labor required in its construction. It is a property *sui generis*, has no market value, and is not affected by the principles of supply and demand; and evidence of what it did in fact cost to construct it, or opinions of what it would now cost to construct it, do not conclusively establish its real and actual value. (*Bureau County* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229.) It is property the value of which is largely determined by its location, its surroundings, and the use that can be and is made of it.

In our opinion the evidence in this record does not establish that the part of the bridge that is in this State was assessed at more than its fair cash value. Indeed, we are strongly inclined to think that it was not assessed at more than one-half its fair cash value. The evidence, however, shows that other property in the township was assessed at about one-third its fair cash value. The law requires all taxable property to be assessed at its fair cash value. The assessment of the property of others at less than its fair cash value, while it may cause the tax-payer whose property is assessed at its fair cash value to bear an undue proportion of the public burden, will not, in the absence of fraud, affect the validity of the tax. (*Spencer & Gardner* v. *People*, 68 Ill. 510; *People* v. *Lots in Ashley*, 122 id. 297.) We are inclined to the conclusion, that while the assessor did not assess the property of appellant more than or even as much as its fair cash

value, yet that he assessed it more in proportion to its value than he assessed other property in the township; but we find no evidence that satisfactorily establishes fraud, and justifies the conclusion that he did this from a wrong motive instead of an error of judgment, or that the boards of review acted from improper and fraudulent motives.

It is assigned as error that the court excluded proper evidence offered by appellant. It introduced as a witness Mark Blackmore, and proved by him that he was the assessor who made the assessment of 1893. To the question, "Did you make any effort to ascertain the value of the bridge?" the witness answered, "I did, so far as I was able." Appellant then asked this question, "What effort did you make?" And an objection to the question was sustained. Appellant then offered to prove by the witness "that the only effort he made, if he made any effort at all, to ascertain the value of the bridge, was to talk with persons at Hamilton who had no knowledge of the value of such a bridge, and did not attempt to learn from experts, or persons having a knowledge of the value of such property, the value thereof, before or at the time he made the assessment." The court sustained an objection to the proffered testimony, and appellant excepted.

In section 1 of "An act to provide for the assessment and taxation of bridges across navigable waters on the borders of this State," approved and in force May 1, 1873, (Hurd's Stat. 1893, p. 1228,) it is provided: "That all bridge structures across any navigable streams forming the boundary line between the State of Illinois and any other State shall be assessed by the township or other assessor in the county or township where the same is located, as real estate; and all provisions of law relating to the assessment and taxation of real estate shall apply to the assessment and taxation of such bridges." And in section 76 of the Revenue act it is provided: "Assessors shall, between the first day of May and the

first day of July of each year, actually view and deter-
mine, as nearly as practicable, the fair cash value of
each tract or lot of land listed for taxation, and set down
in proper columns, in the book furnished him, the value
of each tract or lot improved, the value of each tract
or lot not improved, and the total value." Provision is
expressly made in the act of 1873 for the employment by
the assessor of a competent surveyor, for the purpose of
obtaining the description of the bridge that is required
by the act to be incorporated as a part of the assessment
made, and provision is also therein made for the expense
of making such survey and description. We fail, how-
ever, to find in the act any authority vested in the as-
sessor, or duty imposed on him, to employ a bridge
expert or bridge experts for the purpose of ascertaining
the value of the bridge. · In the absence of legislation to
that effect it would be unreasonable to require him to
employ and compensate such expert or experts. The
evident intention of the legislation quoted above is,
that the assessor shall, himself, personally and "actually
view" the bridge, and exercise his personal judgment and
"determine the fair cash value" of such bridge, the same
as he does in regard to other "real estate." As matter
of course, he would have the right, if he deemed it nec-
essary or best, to either consult bridge experts or seek
information from any other person or persons before
passing his judgment upon the question of value; but
the fact he does not do so would not make his assess-
ment fraudulent or the tax based thereon invalid. The
facts offered in proof constituted no defense against the
application for judgment for the delinquent taxes, and
the action of the court in excluding the testimony was
not erroneous.

 ° We find no substantial error in the record. The judg-
ment is affirmed.           *Judgment affirmed.*