(No. 24191.—

THE PEOPLE *ex rel.* Harrison Parker, Appellant, *vs.* THE
BOARD OF APPEALS OF COOK COUNTY *et al.* Appellees.

*Opinion filed December 15, 1937—Rehearing denied Feb. 2, 1938.*

JAMES C. BYRNE, for appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, (WEYMOUTH KIRKLAND, HOWARD ELLIS, and A. L. HODSON, of counsel,) for appellee The Tribune Company.

THOMAS J. COURTNEY, State's Attorney, (JACOB SHAMBERG, and WILLIAM P. KEARNEY, of counsel,) for other appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

An appeal has been perfected from an order of the circuit court of Cook county striking and dismissing a complaint of Harrison Parker for a writ of *mandamus*.

The original complaint was amended and stricken. A second amended complaint was filed and the parties defendant named were the members of the board of appeals, the county clerk, the county treasurer, and the assessor of Cook county. The Tribune Company was also made a party defendant. The second amended complaint alleged that Parker is a citizen and tax-payer in said county; that the Tribune Company is a domestic corporation chartered in 1861 and is engaged in publishing a newspaper in Chicago; that the company is capitalized at $200,000, divided into 2000 shares of $100 each; that the assessor is, by statute, required to list and tax all capital stock of corporations; that the board of appeals is under statutory

duty to list and assess all omitted property, when discovered, and order the assessor to assess it; that, under the statute, the State Tax Commission is empowered to issue binding rules to govern the assessor, and under that authority the commission adopted "rule 11" to be used as the exclusive rule in computing the capital stock assessments of all Illinois corporations subject to assessment; that the Tribune Company is under duty to pay a capital stock tax computed under that rule; that the company has never paid or offered to pay a capital stock tax; that on May 24, 1935, relator filed a complaint with the board of appeals setting out that the capital stock of the company from 1873 to 1934 had never been assessed according to rule 11 and asked that the board order it assessed as omitted property; and that on June 22, 1935, the relator presented a demand to said board setting forth that no capital stock tax had been paid by the Tribune Company from 1872 to 1902, when its value was $6,000,000, and that the tax and penalties then due, if computed according to rule 11, would have been $6,937,056. The complaint also set out various other groupings of time periods and amounts of taxes and penalties due in such periods. A summation was made of all amounts claimed to be due in taxes and penalties and resulted in the allegation that there was due from the Tribune Company the sum of $87,000,000; that the sum is so great the Tribune Company cannot pay it and the court should conserve its property to enable the State to collect the taxes due.

The complaint further charged that Parker was business manager of the Chicago Tribune in 1905 and for some subsequent years; that cash dividends had been paid uninterruptedly for many years which, if capitalized in the year 1905 at the rate of six per cent per annum, would have established the fair cash value of the stock at not less than $6,000,000; that had the dividend paid out by the relator to the stockholders in the year 1909 been capitalized

at the rate of six per cent per annum, it would have established a fair cash value of $15,000,000; that the capital stock has increased every five years since 1909 in the same proportion that it increased during the five years from 1905 to 1909, inclusive; that the fair cash value of the Tribune Company stock is now $53,600,000; that the official appraisers of the State of Illinois, for the purpose of fixing the inheritance tax for the year 1926, fixed the full cash value of the stock at $19,000,000, and that, since that date, it has increased nearly three-fold. It is also alleged that a conspiracy exists between the Tribune Company and the Cook county assessor, and that a conspiracy has existed between the company and each of his predecessors in office and between the Company and the members composing the board of tax appeals, and with their predecessors in office, to cheat, defraud, swindle and violate the tax laws of the State of Illinois, and that they conspired together so that the State of Illinois was defrauded of said sum of $87,000,000 due it for taxes on capital stock.

Prior to bringing this suit, Parker made a demand upon the board of appeals to order the assessor to list and assess the capital stock of the Tribune Company. This demand was supported by an affidavit, later amended and amplified. All of the parties who are defendants in the complaint in the circuit court were notified to appear before the board of appeals in reference to Parker's demand. They appeared and a hearing was had on three different days, to-wit: May 31, 1935, July 1, 1935, and July 16, 1935. On the second day of the hearing the Tribune Company submitted an answer and Parker announced that he had nothing to offer except his affidavits which were already on file. On the third day of the hearing, the assessor made a report that it was impossible for him to complete an investigation covering a period of sixty-three years before the expiration of the time fixed by law for the adjournment of the board of appeals. He asked that the completion of the investiga-

tion be deferred until a future time when any omission found could be added to a subsequent tax roll. He stated that the assessment of the capital stock for the year 1934 had been determined in a uniform and like manner as other property of the same class and recommended that no change be made in the assessment for that year. The board of appeals thereupon entered an order confirming the assessment of that year, and directing the assessor to investigate the possibility of back taxes for all years from 1872 to 1933, both inclusive, and to list any property in a subsequent assessment roll which he might find ought to be listed and to make report to the board of appeals. In the following month, Parker filed his complaint for *mandamus* as above set forth. On February 3, 1937, the assessor, having made his investigation, filed a report with the board of appeals, in which he stated that an assessment for back taxes against the Tribune Company would not be justified under the facts and circumstances set forth in his report.

All of the defendants entered motions in the circuit court to strike and dismiss the complaint. Later the Tribune Company was granted leave to file an affidavit in support of its motion. The affidavit incorporated the entire record of the proceedings before the board of appeals, including the report of the assessor. A motion by Parker to strike the affidavit was denied, but in the listed "Errors relied upon for reversal" no complaint is made of the court's ruling on the motion. The cause having come on to be heard on the motions to strike and dismiss, the court granted them and delivered a written opinion holding that the complaint was insufficient and did not state a cause of action, and that the court was without jurisdiction to review and supervise the action of the board of appeals. From this order the present appeal was taken.

A petition for *mandamus* must set forth every material fact necessary to show that it is the duty of the persons against whom the writ is sought to perform the act or acts

sought to be compelled. *People* v. *Board of Review*, 326 Ill. 124.

If a capital stock assessment was to be made against the Tribune Company, it was the duty of the assessor to list it and assess it in Cook county, under the Revenue act of 1898. (State Bar Stat. 1935, chap. 120, sec. 7, par. 318.) However, he has no authority to assess property for back taxes except upon the order of the board of appeals. The Revenue act of 1898 took away from the local assessor the power to assess omitted property and vested that power in the board of review. (*People* v. *Sellars*, 179 Ill. 170.) In *Stevens* v. *Henry County*, 218 Ill. 468, it was held that the board of review is the only body which has power to assess property omitted from assessment in former years. In 1932, the legislature abolished boards of review in counties containing 250,000 or more inhabitants and created the board of appeals, consisting of two members. It is expressly provided in the act that such board of appeals shall be the successor to the board of review in such counties. (State Bar Stat. 1935, chap. 120, sec. 32a, par. 343(1).) Section 35a of said act, sub-section (c), par. 346(1,) provides that the board of appeals shall "direct the county assessor to assess all property subject to assessment which he has not assessed for any reason, and enter the same upon the assessment books and to list and assess all property, real or personal, that has been omitted in the assessment of any year, or number of years," etc.

The fourth paragraph of section 3 of the General Revenue act authorized the State Board of Equalization, now the State Tax Commission, to adopt such rules and principles for ascertaining the fair cash value of capital stock as to it might seem equitable and just. In pursuance of that authority the State Board of Equalization adopted what is known as rule 11 for the assessment of capital stock of Illinois corporations. Briefly stated, the rule provides the following formula for the assessment of capital stock:

(1) The fair cash value of shares of stock shall be determined by (a) market quotations; (b) the corporate books; (c) returns made from the Tax Commission, and (d) such other information as the commission may be able to obtain.

(2) The amount of indebtedness (except indebtedness for current expenses. Indebtedness for the purchase of improvement of property is expressly declared not to be a current indebtedness.)

(3) The sum of (1) and (2) must be subjected to the prevailing equalizing factor.

(4) From the result, after applying the equalizing factor, there shall be subtracted the aggregate equalized valuation of all of the tangible property of the corporation. The sum remaining after such deduction constitutes the assessed value of the capital stock. This rule must be followed by all assessors.

It will be seen that the so-called capital stock assessment is not in reality an assessment upon all the capital stock of a company, but is an assessment upon the intangible surplus over and above the assessment levied on the tangible property of the company. This assessment is sometimes said to be upon the "corporate excess." Thus, it will be seen that where the value of a corporation's stock does not exceed the value of its tangible property, there is no basis for an assessment of capital stock, as such. *Calumet and Chicago Canal and Dock Co.* v. *O'Connell,* 265 Ill. 106.

One of the reasons advanced against the sufficiency of the second amended complaint is that the allegations are vague, indefinite and are the mere conclusions of the pleader. It must be conceded that the complaint does not show a compliance with any one of the four essential factors of rule 11 and it is difficult to see how a capital stock value for assessment purposes can be arrived at when those factors are ignored. Parker undertook to comply with the first provision, that is, to fix the fair cash value of the shares

of capital stock by capitalizing dividends at six per cent, but neither the complaint nor the affidavits inform the defendants whether those dividends were paid out of earnings or profits. Unless they were paid out of profits, his process of computation would be manifestly wrong. The complaint makes no reference to the second essential factor—*i. e.*, the fair cash value of the funded indebtedness. It is silent as to whether there is any. It does not allege the third factor—*i. e.*, the equalization or debasement figure, but assumes a rate of thirty per cent, and it entirely omits the fourth essential factor—*i. e.*, the assessed value of the tangible property of the corporation.

The relator insists that it was the duty of the Tribune Company, after he had filed his complaint with the board of appeals, to produce before the board its books of account; that the company had within its possession all the information necessary to show the value of its capital stock and, by refraining to make a disclosure of such information, it tacitly confessed all of the allegations contained in his complaint. That is not the rule of law. No tax-payer is compelled to make such a showing. It is the duty of the assessor, in the first place, to call upon the tax-payer and deliver to him a schedule prepared under the directions of the State Tax Commission. It is to be presumed that the officials have done their duty. If, after the schedule has been filed and an assessment made, an objection is interposed either by the tax-payer or someone else, the burden of showing that the assessment is invalid or erroneous is upon the one making the complaint. The record in this proceeding not only discloses that the relator used an arbitrary method in arriving at the value of the Tribune Company's stock, but that he arrived at figures which are inconsistent with themselves. For instance, he alleged in paragraph 16 that the capital stock of the Tribune Company was at least $6,000,000 for each of the years 1873 to, and including, 1910. In paragraph 17, he alleged the value

to be both $6,000,000 and $8,000,000. He valued the stock in 1909 at $10,000,00 and again at $15,000,000. This unstable method of fixing values has not the definiteness and certainty required of pleadings, but regardless of that, in fixing his values and laying his case before the board of appeals and the circuit court, he ignored the plain mandates of rule 11 which he now says the taxing authorities were bound to implicitly follow.

The complaint charges that the Tribune Company has been in a conspiracy with every assessor, without exception, from 1872 to the present time. It also charges that it has been in a conspiracy with the members of the board of appeals and their predecessors. It does not plead a single fact to support this charge of fraud and it is well understood that fraud is not a conclusion of law and it is, therefore, incumbent upon the party who would set it up, to state the facts relied upon as constituting it. (*East St. Louis Connecting Railway Co.* v. *People,* 119 Ill. 182.) The general charge that a party acted fraudulently or was guilty of fraud is a statement of a conclusion and is not good pleading, as the facts should be averred upon which the charge of fraud is based. (*People* v. *Board of Review,* 326 Ill. 124.) The averment that property has been grossly under-valued in assessment is of no avail when the pleading does not show, in an apt way, what the assessable value of the property actually is. In this case there is no such showing. Of course, the bill contains allegations of value in various amounts, but the method employed in arriving at those values was obnoxious to the law of this State. As a result the averments as to value are, at most, mere conclusions.

No tax-payer can be required to pay a greater proportion, according to the value of his property, than any other tax-payer. Taxing authorities are not justified in imposing a far greater burden upon one tax-payer than they do upon other tax-payers of the same class. It was long ago

said in *Board of Supervisors* v. *Chicago, Burlington and Quincy Railway Co.* 44 Ill. 229, that uniformity is regarded as the vital principle, and the dominant idea of the constitution, concerning taxation. It is pertinently stated: "Where is the power lodged, in view of this principle, to compel A to pay, on his land and personal property of no more value than the same kind of property belonging to B, forty per cent more taxes than are assessed against B? We affirm such a power nowhere exists, and if it did, it would be so revolting in its exercise to the lowest sense of justice with which our species is imbued as to justify any and every lawful expedient for relief against it."

The fifteenth annual report of the State Tax Commission (table 28, page 217) states that from 1920 to 1933, inclusive, there were 30,000 corporations subject to assessment by the local assessors in this State. During those fourteen years, the capital stock assessment against such corporations aggregated $602,936,454. The valuation which the relator asks to be assessed against the Tribune Company, alone, during the same period of time, aggregates $1,232,370,620. The record shows that there are several large newspaper publishing companies in the county of Cook, which have been heretofore assessed on the same basis as the Tribune Company. To grant the prayer of relator's petition would result in gross lack of uniformity in taxation. It is no answer to say that, if this writ is granted, it will be within the power of some taxing body or some individual to hereafter make complaints and bring suits against other tax-payers in the same class as the Tribune Company. It is too conjectural and speculative for this court to depend on.

We think this suit was prematurely brought. It was the statutory duty of the board of appeals to make an investigation concerning the matters which were set up in the affidavits of the respective parties. The sum of money claimed to be due from the Tribune Company is stupendous.

A proper investigation would require a search of records and an accounting covering sixty-three years of time. It would be necessary to examine tax records and tax schedules and perhaps many other records and much other data. The request of the assessor for more time to perform the work was not only reasonable but necessary. The board of appeals could not, without a thorough investigation, determine whether it should order the assessor to list "omitted property." The assessor proceeded with the task of investigating, imposed upon him by the commission, but in about a month, and before the assessor could complete his work, the relator brought this suit. Since that time, the assessor has made his report and has recommended to the board of appeals that a change in the assessment would not be justified. Whether his conclusion was correct or not, we are not called upon to say. That is a matter which could have been argued before the board of appeals. Suffice it to say that this suit was instituted before the controversy was disposed of by the board of appeals and we see nothing in the record to indicate any undue delay on the part of the assessor or the board of appeals.

There are numerous other points urged by the respective parties and many authorities cited in support of their contentions. We have given careful consideration to all of them, but it is not prudent to extend this opinion to further length. Nor do we find it necessary to deal with the charge that the relator has not come into court with clean hands and that this proceeding was prompted by hatred, revenge and ulterior motives.

The complaint does not charge the county clerk or the county treasurer with a failure or refusal to perform any duty imposed upon them. While it charges the assessor with conspiracy in failing to list capital stock, he has no power now to list it, except upon the order of the board of appeals, and that order has not been made. Consequently, a writ cannot issue against him. The Tribune Company is

the property owner named in the complaint and we expressly held, in *People* v. *Webb,* 256 Ill. 364, that property owners are not necessary or proper parties in such a proceeding as this.

We are of the opinion that the order of the circuit court of Cook county is correct and that the petition for *mandamus* was properly dismissed. *Order affirmed.*