(No. 33634.—

The People *ex rel.* James T. Callahan, County Collector, Appellee, *vs.* Gulf, Mobile and Ohio Railroad Company, Appellant.

*Opinion filed January 19, 1956—Rehearing denied March 19, 1956.*

HERSHEY, C.J., dissenting.

GILLESPIE, BURKE & GILLESPIE, LOUIS F. GILLESPIE, and HUGH J. DOBBS, all of Springfield, (J. N. OGDEN, of Mobile, Alabama, and W. H. THOMAS, of Alton, of counsel,) for appellant.

FRED P. SCHUMAN, State's Attorney, of Edwardsville, (KENNETH F. KELLY, of Edwardsville, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellant, the Gulf, Mobile and Ohio Railroad Company, filed objections in the county court of Madison County to the county collector's application for judgment and order of sale of real estate, delinquent for nonpayment of taxes for the year 1951. A motion by the collector to strike the objections was sustained and, thereafter, the court entered judgment against appellant for $18,578.38, the amount of tax paid under protest and embraced by the objections. The revenue being involved, appellant has perfected a direct appeal to review both the order striking its objections and the subsequent judgment.

The parties agree, as indeed they must, that the Revenue Act requires all valuations upon which tax rates are de-

veloped and extended to be at full, fair cash value. (Ill. Rev. Stat. 1951, chap. 120, pars. 501, 502.) By its stricken objections, appellant, whose property was assessed at State level along with other railroads, alleged that its own property has been assessed at full, fair cash value but that it had been excessively and illegally taxed when locally assessed property in the county was fraudulently and intentionally undervalued at less than full, fair cash value. The objections further alleged that the fraud was brought about when the county assessor knowingly assessed local property "upon a valuation not to exceed 10.2 per cent of the full, fair cash value;" when the county board of review knowingly closed and certified the tax lists and books without revising the general level of assessments; and when the Department of Revenue, which section 146 of the Revenue Act charges with the duty of lowering or raising the total assessed value of property certified by any county so that property will be assessed at its full, fair cash value, knowingly and intentionally fixed an equalization rate, or multiplier, at "a percent which would produce a debased equalized and assessed valuation of not to exceed 60% of the full, fair cash value of locally assessed property." Appellant objected against paying taxes on rates higher than would have been developed if locally assessed property had been at one hundred percent full, fair cash value in the taxing formula by which rates were computed. Translated into figures, it is appellant's contention that because locally assessed property was fraudulently and intentionally valued at less than full, fair cash value, the resulting increase in rates caused its tax bill of $45,017.81 to be excessive by $18,578.38.

Some question is raised as to whether appellant, who admits that its own property was correctly assessed, has pursued the proper remedy. We find, however, that this court has observed on several occasions that since valuations must be the result of honest judgment and not of

mere will, it follows that an assessment may be impeached both when fraudulently made at too high a rate, and when fraudulently made at too low a rate. (*People's Gas Light and Coke Co. v. Stuckart,* 286 Ill. 164, 174; *Chicago, Burlington & Quincy Railroad Co. v. Cole,* 75 Ill. 591, 594.) Further, in a long line of cases, it has been held that the question of discrimination in assessments may properly be raised on an application for judgment for delinquent taxes. (See: *People ex rel. Ross v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co.* 381 Ill. 58, 61, and cases there cited.) Here the essence of appellant's objections is that there was a fraudulent discrimination resulting from the undervaluation of locally assessed property which had the effect of denying appellant equal protection of the Revenue Act, and of subjecting it to taxation lacking in both constitutional and statutory uniformity. We conclude that a proper remedy has been pursued.

Under section 1 of article IX of the Illinois constitution, the courts, in the absence of fraud, have no power to review or determine the value of property fixed for purposes of taxation by the administrative officers to whom such function has been delegated. (*People ex rel. Tedrick v. Allied Oil Corporation,* 388 Ill. 219; *Keokuk & Hamilton Bridge Co. v. People,* 145 Ill. 596; *Spencer & Gardner v. People,* 68 Ill. 510.) It is only when the valuation has been fraudulently made that it is subject to judicial review. (*Kinderman v. Harding,* 345 Ill. 237; *People's Gas Light and Coke Co. v. Stuckart,* 286 Ill. 164.) In the latter regard, we have held that error in the exercise of honest judgment will not invalidate the tax, that fraud is never presumed, and that mere overvaluation is not sufficient to establish fraud. (*People ex rel. Miller v. Chicago, Burlington and Quincy Railroad Co.* 300 Ill. 399; *Keokuk and Hamilton Bridge Co. v. People,* 161 Ill. 514.) On the other hand, it is held that overvaluation may be so excessive, under some circumstances, as to justify the conclusion that it

was not honestly made and that it was known to be excessive. In such cases courts will intervene to prevent a constructive fraud. (*People ex rel. Rhodes* v. *Turk,* 391 Ill. 424; *Pacific Hotel Co.* v. *Lieb,* 83 Ill. 602.) Where an assessment is sought to be impeached for fraud, the burden is on the objector to show either actual fraud by clear and sufficient evidence, or to show that an assessment is so grossly excessive as to amount to evidence of fraud and an indication that the taxing authorities, in making the same, wilfully and intentionally discriminated against the said objector. (*People ex rel. Tedrick* v. *Allied Oil Corporation,* 388 Ill. 219; *People ex rel. Johnson* v. *Robison,* 406 Ill. 280.) Although the foregoing cases speak only in terms of fraudulent overvaluation of property, we are of the opinion that logic and justice require that the same established principles apply where an assessment is sought to be impeached on the grounds of fraudulent undervaluation. Cf. *Coulter* v. *Louisville & Nashville Railroad Co.* 196 U.S. 599, 49 L. ed. 615; *Sundry Lake Iron Co.* v. *Township of Wakefield,* 247 U.S. 350, 62 L. ed. 1154; *Sioux City Bridge Co.* v. *Dakota County,* 260 U.S. 441, 67 L. ed 340.

The first question which presents itself is whether, in light of the principles enunciated in the cited cases, appellant's objections sufficiently charged either actual or constructive fraud. Insofar as actual fraud is concerned it is elementary that it devolves upon the party claiming it to state the facts relied upon as constituting it. (*Sterling Gas Co.* v. *Higby,* 134 Ill. 557; *Sanitary District* v. *Gifford,* 257 Ill. 424; *Anderson* v. *Anderson,* 339 Ill. 400.) In the objections before us the various steps taken by the taxing authorities are set forth and, in general terms, are alleged to have been fraudulent, wrongful and illegal. Bearing in mind, first, that mere overvaluation or undervaluation is not sufficient to establish fraud and, second, that the presumption obtains that the transactions assailed by appellant were

done in good faith and with honest motives, it is apparent that such general charges, unaccompanied by any facts showing fraudulent or dishonest actions or motives, are mere expletives and conclusions of the pleader and are not good pleading. As such, the charges were not admitted by the collector's motion to strike and the trial court properly held that the objections failed to sufficiently charge actual fraud. *Owens* v. *Green,* 400 Ill. 380; *People ex rel. Parker* v. *Board of Appeals,* 367 Ill. 559; *Sanitary District* v. *Gifford,* 257 Ill. 424; *Fogg* v. *Blair,* 139 U.S. 118, 35 L. ed. 104.

Considering next the question of whether appellant's final pleading is sufficient to make a showing of constructive fraud, we find it alleged generally that locally assessed property was valued, assessed and equalized at not exceeding sixty percent of its full, fair cash value, whereas appellant's property was assessed and equalized at the full, fair cash value thereof. By means of a schedule, drawn by appellant and incorporated into the objections, it is specifically alleged that the full, fair cash value of all locally assessed property amounted to $827,453,141 for the year 1951, but that all of such property had been placed on the Madison County tax rolls for that year in an amount totalling only $496,471,885. The same schedule bears the allegation that the full, fair cash value of appellant's property was $2,302,180. It is appellant's contention that the 330 million dollar discrepancy in the reckoning of locally assessed property values is so gross as to demonstrate that the taxing authorities could not have been honest in their valuation, thus entitling appellant to relief from a constructive fraud. We are of the opinion, however, that the rule of law contended for cannot be applied to the case made out by the bare allegations of value relied upon.

It is alleged that "locally assessed property was not assessed at its full, fair cash value." Standing alone this is but a conclusion of the pleader. We have the further

allegation, however, by means of appellant's schedule, that the full, fair cash value of locally assessed property was $827,452,131. For all that appears in the objections, the figure alleged by appellant has been arrived at by the mechanical process of recomputing values on the basis of the bare conclusion that the equalized assessed valuation arrived at by the taxing authorities represented but sixty per cent of the full, fair cash value of locally assessed property. In the absence of facts showing a basis, such a mechanical increase in the values fixed by the taxing authorities is itself merely a conclusion of the pleader. There are no facts alleged which either afford a basis for accepting the allegation that local property was assessed at other than its full, fair cash value, or which would permit a court to make the comparison in values the appellant seeks to draw.

It is our conclusion, therefore, that the objections do not state sufficient facts to make out a case of constructive fraud, within the meaning of the authorities relied upon by appellant, and we hold that the county court was justified in sustaining the motion to strike them. Accordingly, its judgment is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE HERSHEY, dissenting:

To deny a hearing on the merits because of a pleading defect seems to me violative of both the letter and spirit of modern procedural statutes and rules of practice. As a result of both legislative enactment and prior judicial opinion, this court is committed to the position that pleadings are to be liberally construed with a view of doing substantial justice between the parties.

Section 235 of the Revenue Act of 1939 requires a taxpayer to specify "the particular cause of objection" and directs the court to "determine the matter in a summary manner, without pleadings, and * * * pronounce judg-

ment as the right of the case may be." To determine the sufficiency of a tax objection from a "pleading" standpoint, one must consider whether it adequately informs the court and opposing counsel of the defense relied upon. (*People* v. *Chicago, Burlington and Quincy Railroad Co.* 281 Ill. 500, 503; *People* v. *Shortall,* 287 Ill. 150, 151.) In the instant case I do not understand how there could have been the slightest doubt as to the nature of the defense. If the objection were more explicit it doubtless would be subject to the criticism of alleging evidentiary facts.

A case directly in point is *People* v. *K. and H. Bridge Co.* 287 Ill. 246, where this court stated at pages 250-1: "There was a legal objection to the amount of the tax, which the appellant had a right to prove, and the court erred in striking it from the files. That objection was that the property was arbitrarily, knowingly and fraudulently assessed at its full market or cash value while all other property was arbitrarily and knowingly assessed at about forty per cent of such value in accordance with an established rule and long custom for assessing property.  *  *  * It is sufficient for an objector to show such willful and intentional violation of the constitutional provision, and where an assessment shows a very great disparity and discrimination, which could not reasonably have arisen from an error of judgment, the courts will give relief.  *  *  * The objection showed such alleged disparity and discrimination between the full cash value of appellant's property and the valuation of forty per cent of such cash value of all other property, and the appellant had a right to prove the objection." I say the same in this case—the appellant had a right to prove the objection.