Keenan v. The People.

---

## P. H. Keenan v. The People of the State of Illinois.

1. ELECTIONS—*Ballots Returned to the Commissioners Not to be Opened.*—In the act of June 22, 1891 (R. S., 1893, Ch. 46), there is no provision permitting the election commissioners to open the sealed packages in which the ballots are by the judges of election inclosed, save in the case of a contested election, and the election commissioners are forbidden to open such packages under any other circumstances.

2. ELECTION COMMISSIONERS—*Can Not be Compelled to Produce Ballots Before Grand Jury.*—The election commissioners can not be compelled to produce before the grand jury the ballots voted at an election and returned to said commissioners from the precincts by the

judges of election under section 27 of the act of June 22, 1891. (R. S., 1891, 685.)

3.  COURTS—*Power to Require the Production of Ballots.*—A court has no power to require the election commissioners to produce and submit to examination the ballots in their keeping, except in the case of an election contest.

4.  SAME—*Power to Compel Obedience to the Law.*—Courts do not make the law. They may and do declare what it is and may compel obedience to it; they have no power to command any one to disobey the law, or to do that which it does not enjoin.

5.  CONTEMPT OF COURT—*Erroneous and Void Orders.*—An order of court which is merely erroneous must be obeyed; he who disobeys such a mandate commits a contempt for which he may be punished, but an order in excess of the powers of the court is without jurisdiction and void; disobedience to it is not a contempt.

**Contempt of Court.**—Error to reverse an order of the Criminal Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the March term, 1895. Reversed. Opinion filed April 4, 1895.

### STATEMENT OF THE CASE.

The events and proceedings which resulted in the fine imposed upon the plaintiff in error by the judgment of the Criminal Court of Cook County, are briefly as follows:

December 19, 1893, a special election for mayor of the city of Chicago was duly held. On April 3, 1894, an election of town officers and aldermen was duly held in Chicago, both elections having been conducted under the provisions of the act regulating elections in cities, towns and villages, enacted June 19, 1885, and adopted by the city of Chicago in the same year.

The votes cast at this last election were duly canvassed by the board of canvassers, consisting of those who at that time were election commissioners of said city, and also of the city attorney and the judge of the County Court. On April 9, 1894, the County Court of Cook County in accordance with the certified copy of the record of this canvass, issued to those declared elected thereby, certificates of election.

The envelopes containing the ballots, duly sealed, subscribed and indorsed, according to law, were duly delivered to said election commissioners, and remained in the exclu-

sive custody of the commissioners, as required by law, until and after May 11, 1894.

On May 7, 1894, a *subpoena duces tecum* was issued out of said court, addressed to the election commissioners and their clerk.

Said subpoena directed the commissioners and their clerks to appear before the grand jury to give evidence " concerning a certain complaint made before said election commissioners against John G. McMahon, James Maroney and George W. Heck," and to bring the registry books, poll books and tally sheets of the election held April 3, 1894, " in the 22d precinct of the 29th ward of said city of Chicago," and also all ballots voted and returned to said commissioners from said precinct at said election.

The election commissioners and their clerks appeared before the special grand jury with all the records called for, except said ballots voted and returned, which they submitted to said grand jury they could not, as advised by their counsel, produce without violation of the statutes of the State and their oaths of office.

A rule to show cause why they should not be attached for contempt was thereupon entered against said commissioners. An answer to said rule was filed, wherein plaintiff in error and his fellow-commissioners and their clerk, disavowing any intentional contempt of court, responded to the rule, justifying their action as that which the law required of them in their respective offices. The court thereafter entered an order adjudging said commissioners guilty of contempt of court, and that each of them be fined the sum of $1,000.

To reverse which order the writ of error herein has been sued out, and errors are assigned questioning the jurisdiction and power of the court below, and the form, substance and validity of said order.

BRIEF OF PLAINTIFF IN ERROR, LAWRENCE P. BOYLE AND MORAN, KRAUS & MAYER, ATTORNEYS.

If produced and opened as required by the Criminal Court, the ballots would have been rendered useless as evidence in

an election contest, and would also have become incompetent upon the hearing of any criminal case. Their use as evidence would have been utterly destroyed. In order to constitute competent evidence, they must be carefully preserved in strict accordance with the statute. State v. Bate, 70 Wis. 409, 412, 413; McCrary on Elections, 3d Ed., Secs. 436, 438, 445; Cooley's Con. Lim., 6th Ed. 788; also cases cited under note 1, page 799; Albert v. Twohig, 52 N. W. Rep. 582, 584; Hudson v. Solomon, 19 Kas. 177; State v. Bate, 70 Wis. 409, 413; Kingery v. Berry, 94 Ill. 515; People v. Livingston, 79 N. Y. 279; Hartman v. Young, 20 Pac. Rep. 17; 17 Or. 150; Powell v. Holman, 6 S. W. Rep. 503, 505; 50 Ark. 85; Reynolds v. State, 61 Ind. 392; Coglan v. Beard, 65 Cal. 58.

"Where, as is the case in several of the States, the statute provides a mode of preserving the identical ballots cast at an election, such statute, and particularly those provisions which provide for the safe keeping of such ballots, must be followed with great care. Such ballots, in order to be received in evidence, must have remained in the custody of the proper officers of the law from the time of the original official count until they are produced before the proper court or officer, and if it appear that they have been handled by unauthorized persons, or that they have been left in an exposed and improper place, they can not be offered." McCrary on Elections, Secs. 436, 438, 445.

If, however, the ballots have not keen kept as required by law, and surrounded by such securities as the law prescribes, it would seem that they should not be received in evidence at all. Cooley's Con. Lim. 788.

The statute against package being opened (Rev. Stats. of 1893, Chap. 46, Secs. 59 and 314, p. 8, *supra*), is modified by the single proviso excepting election contests. The introduction of this exception is necessarily exclusive of all other independent exceptions. Sutherland on Stat. Con., Secs. 325, 328; Broom's Legal Maxims, star pages 638 to 640 (6th Am. Ed.); Dutton v. City of Aurora, 114 Ill. 138, 143, 144; Eldridge v. Pierce, 90 Ill. 474, 482, 483; State v. Board Pub-

lic Schools, 112 Mo. 213, 218; Potter's Dwarris on Statutes, 221; Gaddis v. Richland County, 92 Ill. 119, 124; Rammis v. Clark, 13 Ill. 544, 546.

Civil contempts are those *quasi* contempts which consist in failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court; while criminal contempts are all those acts in disrespect of the court or of its process, or which obstruct the administration of justice, or tend to bring the court into disrepute, such as disorderly conduct, insulting behavior in the presence or immediate vicinity of the court, or acts of violence which interrupt its proceedings; also disobedience or resistance of the process of the court, etc. Rapalje on Contempt, Sec. 21.

The Supreme Court of this State has uniformly held that acts in disrespect of the court, or its process, which obstruct the administration of justice, are in the nature of criminal offenses. Beattie v. The People, 33 Ill. App. 651; Stuart v. The People, 3 Scam. 395; Haines v. The People, 97 Ill. 161; The People v. Neill, 74 Ill. 68.

By these and the following authorities the distinction between civil and criminal contempts is made clear, as is also the fact that refusal to obey a subpœna is a criminal contempt. People v. Lester, 150 Ill. 408, 423; People v. Diedrich, 141 Ill. 665; Rawson v. Rawson, 35 Ill. App. 505; Leopold v. People, 140 Ill. 552; Bonner v. People, 40 Ill. App. 628; De Beukelear v. People, 25 Ill. App. 460. A criminal contempt is a recognized criminal offense—a misdemeanor at common law. In Beattie v. People, 33 Ill. App. 651, *supra*, it was expressly held that a criminal contempt was a misdemeanor and its prosecution barred by the statutes of limitation governing the prosecution of misdemeanors. The court say, p. 662: The punishment of contempt fixes its character as a misdemeanor, as the penalty may be either by fine or confinement in jail or both. Larkin v. The People, 94 Ill. 501; Rawson v. Rawson, 35 Ill. App. 505; Bonner v. People, 40 Ill. App. 628.

There can be no doubt that the order was void in impos-

ing such fine of $1,000, and also in committing plaintiff in error to jail until such fine was paid, which might result in commitment for more than one year. Lamkin v. People, 94 Ill. 501; In re Patterson, 99 N. Car. 407, 418; Shank's Case, 15 Abb. Pr. (N. Series) 38; People ex rel. Stokes v. Risley, 38 Hun 280; People v. Carter, 48 Hun 165; Ex parte Stewart, 16 Neb. 193 (S. C., 20 N. W. Rep. 255); Church on Habeas Corpus, Secs. 385, 353a.

Mr. Presiding Justice Waterman delivered the opinion of the Court.

Section 27 of an act approved June 22, 1891, in force July 1, 1891, Revised Statutes, 1893, Chap. 46, Sec. 314, in pursuance of which, the election had in Chicago April 3, 1894, was held, provides that—

" When the canvass of the ballots shall have been completed, as now provided by law, the clerks shall announce to the judges the total number of votes received by each candidate; each judge of election in turn shall then proclaim in a loud voice the total number of votes received by each of the persons voted for, and the office for which he is designated, and the number of votes for, and the number of votes against any proposition which shall have been submitted to a vote of the people; such proposition (proclamation) shall be *prima facie* evidence of the result of such canvass of the ballots. Immediately after making such proclamation, and before separating, the judges shall fold in two folds, and string closely upon a single piece of flexible wire, all ballots which have been counted by them, except those marked ' objected to,' unite the ends of such wire in a firm knot, seal the knot in such a manner that it can not be untied without breaking the seal, inclose the ballots so strung in an envelope, and securely tie and seal such envelope with official wax impression seals, to be provided by the judges, in such manner that it can not be opened without breaking the seals, and return said ballots, together with the package containing the ballots marked ' defective or objected to,' in such sealed package or envelope, to the proper clerk or to the

board of election commissioners, as the case may be, and such officer shall carefully preserve said ballots for six months, and at the expiration of that time shall destroy them by burning; without previously opening the package or envelope.   Such ballots shall be destroyed in the presence of the official custodian thereof, and two electors of approved integrity and good repute, and members, respectively, of the two leading political parties.   The said electors shall be designated by the county judge of the county in which such ballots are kept; provided, that if any contest of the election of any officer voted for at such election, shall be pending at the expiration of said time, the said ballots shall not be destroyed until such contest is finally determined.   In all cases of contested elections, the parties contesting the same shall have the right to have said ballots opened, and to have all the errors of the judges in counting, or refusing to count, any ballot corrected by the court or body trying such contest, but such ballots shall be opened only in open court, or in open sessions of such body, and in the presence of the officer having the custody thereof."

There is to be found in the law under which the election of April 3, 1894, was held, no provision permitting the election commissioners to open the sealed packages in which the ballots are by the judges of election inclosed, save in the case of a contested election; and it is manifest that the commissioners are forbidden to open such packages under any other circumstances.

Courts do not make the law; they may and do declare what it is, and may compel obedience to it; they have no power to command any one to disobey the law, or to do that which it does not enjoin.

The election commissioners being forbidden to open the packages in which the ballots intrusted to their care are contained, except in the case of an election contest, a court has not power to, under other circumstances, require them to produce and submit to examination the ballots in their keeping.

It is immaterial what the public agency may be which seems to demand that public officers or private citizens vio-

late the law; neither for the purpose of convicting the guilty or acquitting the innocent, have courts authority to direct any one to act in disregard of the law.

In considering the validity of an order collaterally attacked, as is the order directing the plaintiff in error to produce certain election ballots, the distinction between orders which are merely erroneous, and hence liable to reversal, and orders which are void because the court has no power to make them, must be kept in mind.

An order of court which is merely erroneous must be obeyed; he who disobeys such a mandate commits a contempt for which he may be punished. Kerfoot v. The People, 51 Ill. App. 409.

If the only reason for refusing to produce the ballots was that the evidence that might be afforded by them would be immaterial, irrelevant, or not competent in the matter under examination in the Criminal Court, a very different question from that presented by the record of this cause would be before us. People v. Lester, 150 Ill. 408–423; Kerfoot v. The People, 51 Ill. App. 409; In re Brown, 97 Cal. 83.

The order of the Criminal Court being in excess of its powers was without jurisdiction and therefore void. Its disobedience was not contempt.

The order imposing a fine upon the plaintiffs in error is reversed.