THE PEOPLE *ex rel.* The City of Chicago *et al.* Appellants, *vs.* THE BOARD OF REVIEW OF COOK COUNTY *et al.* Appellees.

*Opinion filed June 22, 1927.*

1. MANDAMUS—*a petition must set forth all facts necessary to show duty involved.* A petition for *mandamus* must set forth every material fact necessary to show that it is the duty of the persons against whom the writ is sought to perform the act sought to be compelled, and the writ will not be granted in doubtful cases.

2. SAME—*court may grant portion of the relief asked.* Under a petition for a writ of *mandamus* the court is not bound to grant all the relief asked but may grant the writ so far as the relators show a right to it.

3. TAXES—*when petition for mandamus is insufficient to compel board of review to hear complaints.* A petition for a writ of *mandamus* to compel the board of review to review the assessment of real estate, decedents' estates and the capital stock of corporations and of banks, on the ground that such properties, in instances enumerated, were grossly undervalued, is insufficient, where, as to the real estate, there is no averment in the petition that real estate

assessments have not been equalized or that the valuations complained of are less than the equalized values in the assessment district, and as to decedents' estates there is no showing that portions of the estates enumerated were liable to assessment and were omitted, and as to corporations and banks there is merely the averment that their capital stock is assessed too low, no facts being averred to show that the assessments were not legally made.

4. SAME—*board of review may be compelled to adopt rules and regulations.* A board of review, at the instance of taxing bodies ultimately receiving the taxes as well as of tax-payers, may be compelled by *mandamus* to make and publish rules and regulations for the guidance of persons doing business before the board, in accordance with the requirements of section 39 of the Revenue act of 1898, but the board may exercise its judgment and discretion as to the form and character of the rules.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

FRANCIS X. BUSCH, Corporation Counsel, and FRANK S. RIGHEIMER, (LEON HORNSTEIN, ERNEST S. HODGES, ELMER M. LEESMAN, and URBAN A. LAVERY, of counsel,) for appellants.

ROY MASSENA, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The city of Chicago and the board of education of the city of Chicago, as relators, filed in the name of the People of the State of Illinois a petition for *mandamus* against the board of review of Cook county and the three men composing the board. The peremptory writ was sought to compel the board to hear 9200 complaints filed with the board of review by the relators about the assessment of property for the year 1926 and to compel the board to make and publish reasonable rules for the guidance of persons doing business before the board. Defendants filed a general and special demurrer to the petition. The demurrers were sustained and the petition dismissed. From that judgment relators have appealed.

The petition is lengthy, containing forty printed pages, to which is attached an exhibit consisting of 9200 complaints filed by appellants with the defendant board and upon which it is alleged the board had not acted. To as briefly as possible summarize the allegations in the petition requires considerable space, but an understanding of the questions involved seems to make that necessary.

The petition is divided into twenty-two paragraphs. Paragraphs 1, 2 and 3 merely relate to the public capacity of relators and defendants, and paragraph 4 alleges that under the law the board of review is charged with the duty of "revising the assessment of property" in Cook county; that the statute provides, on complaint in writing, that if any property described in said complaint is incorrectly assessed the board shall review the assessment and correct the same as shall appear to be just. (Cahill's Stat. 1925, chap. 120, sec. 35, par. 4, p. 2045.) The powers and duties of the board are more fully set forth in the act for the assessment of property in force July 1, 1898, and amendments thereto. (Cahill's Stat. 1925, p. 2038.)

Paragraph 5 of the petition alleges that in the year 1925, and also in previous years, relators were compelled to file complaints in writing before the board because the assessments on particular property described were either omitted in the books or so grossly inadequate as to be improper, unequal and unjust; that the experience of relators in filing complaints in previous years convinced them that filing complaints, except in very few instances, was wholly ineffective for the purpose of correcting the assessments.

Paragraph 6 alleges that in 1926 relators determined to adopt an extensive, comprehensive and accurate survey of assessable property in the city of Chicago with the view of filing complaints. In such survey relators took into account the assessed valuation of the property in said city, and such property as was improperly assessed was divided into four classes: (a) Real estate; (b) decedents' estates;

(*c*) capital stock of domestic corporations other than banks; (*d*) capital stock of banks. Class (*a*) was subdivided into two heads, namely, flat-buildings of six flats and over, and industrial, commercial or other premises of the value of $50,000 and over. Relators employed a corps of experts to list and appraise the real estate and from the list of the properties so investigated and appraised selected 8000 glaring instances of under-assessment by the authorities of Cook county. The petition sets out the form of the complaint used, and avers that as to decedents' estates investigators for relators examined the records of estates pending in the probate court whose assets assessable by the authorities amounted to $50,000 and over. Relators listed 300 separate decedents' estates, each a glaring instance of under-assessment, and filed complaints as to said 300 estates. The petition alleges as to capital stock of domestic corporations other than banks they investigated and reported assets of all corporations having an authorized capital stock of $500,000 or over whose stock is assessable by the authorities of Cook county and filed 700 complaints as to such assessments. As to banks, relators caused to be examined reported statements as of April 1, 1926, of all State and National banks in the city of Chicago and filed 200 complaints of assessments of a valuation lower than was lawful, equitable and proper. The form of complaint used was set out in each classification.

Paragraph 7 sets out the work required, and that the persons employed to do it consumed months of time and resulted in the filing of the 9200 complaints; that in doing the work relators acted in good faith, with the purpose and intent to assist the board of review in the matter.

Paragraph 8 alleges that during the time the work was being carried on, prior to September 11, 1926, (the date the last complaint was filed,) it was not possible for relators to secure figures or information of the assessments made for the year 1926 described in the written complaints be-

cause they were informed by the assessing authorities the books were being used and were not available for examination by relators.

Paragraph 9 alleges the written complaints were filed with the board of review on or before September 11, 1926, and within the time required by law. Five hundred sixty-two of the complaints were filed prior to August 1, 1926, 6537 complaints were filed during the month of August, 1926, and the remainder of the complaints were filed on or before the tenth day after the time when the assessment books were filed with the board of review.

Paragraph 10 alleges that the Revenue act in force July 1, 1898, and amendments thereto, make it mandatory on the board of review to hear and consider each of said complaints and to review the assessment on the property described therein, and to "hold public sessions at its board rooms and continue such sessions from day to day until all complaints and other business have been disposed of," and "for the purpose of enforcing the provisions of this act, the several taxing bodies interested therein are hereby empowered to employ counsel to appear before said board and take all necessary steps to enforce the assessment on such omitted property." The petition further alleges that the statute makes it mandatory for the board of review to meet from time to time until all complaints have been heard and considered in open session, and further makes it mandatory on the board not to adjourn until each of said complaints has been heard and considered and the assessment of property described in each complaint reviewed and revised by the board of review.

Paragraph 11 alleges that relators from time to time, before and after September 11, 1926, appeared by counsel before the board of review and requested the board to set the complaints down for hearing, but the board failed and refused to consider any of the written complaints and took no action with regard to them until on or about October 25,

1926, when the board pretended to set down for hearing on that day about 200 complaints, but did not, in fact, hear them, but announced the board "had concluded that the city of Chicago and the board of education file with the board of review the information which they desire the board to have regarding each of the complaints. When we get this information, if we find that the information shows that there is any necessity for individual hearings we shall call in the people and notify the people who are complaining. That will be the order of the board this morning." The petition further alleges that thereafter for some days none of the complaints filed by relators were set for hearing or heard and considered, and on November 4, 1926, relators filed a written memorandum with the board of review by delivering it to one of the members and chairman, in which relators objected to the proposed plan of the board and requested the usual procedure be followed and the complaints heard in open session. The petition alleges that relators did file with the board of review such information as was immediately reducible to written form on all of said complaints, which involved a large amount of labor and clerical work, and also notified the board of review that relators would insist upon a hearing in open session of said complaints, but none of the complaints were set for a hearing or were heard or considered by the board of review, as required by law, until November 8, 1926, when the board sent to relators a communication, as follows: "You are hereby notified that on Monday, November 15, at 10:00 A. M. the board of review will begin the hearing of the personal property complaints on estates and at 2:00 P. M. the personal property complaints of individuals, firms and corporations filed by the city of Chicago and board of education. On Tuesday, November 16, at 10:00 A. M. personal property complaints against individuals, firms and corporations and at 2:00 P. M. real estate complaints. On Wednesday, at 10:00 A. M. and at 2:00 P. M., city banks filed by the

city of Chicago and board of education. You are requested to be present at that time." The petition avers that on the 15th of November the relators appeared before the board of review and notified said board they were ready to proceed with the hearings, but the board never heard or considered the complaints, and instead on that day, in open session, made an announcement that "on all of these complaints which have been filed by the city of Chicago and the board of education,—and you will determine that from reading your notice or else remember it from having read it,—the board of review will not pass on any of those hearings until such time as either the city of Chicago or the board of education, through their representatives, supply the board of review with information, or the information upon which they base their complaints. When we receive that information from them you will hear from us again. * * * The estates, so far as they are concerned, we can get all the information we desire from the inventory. * * * On all other notices affecting personal property of individuals or corporations or partnerships they will come under the other rule, as I have stated. That, of course, also pertains to the different notices that have been sent out for hearing this afternoon. This corps of people representing both of these taxing bodies, the city of Chicago and the board of education, will now go to work and rapidly give us the information they have at their hands and supply it to us immediately." The petition alleges the relators continued the work of furnishing written information until it had been furnished with respect to all the 9200 complaints.

Paragraph 12 alleges that in addition to the announcement of the board of review on October 25, 1926, that it would notify the relators when further hearings on the complaints would be held, various members of the board, their officers and clerks, told relators on numerous occasions, both before and after October 25, 1926, that the board of review would give relators notice of the setting

for hearing to consider the complaints, and relators relied on their doing so, but down to the time of filing this petition, December 24, 1926, no such notice had been given, and the petition alleges that any claim of the board of review of pretended hearings on the complaints is contrary to law and void and constitutes bad faith on the part of the board of review.

Paragraph 13 alleges that the complaints of real estate assessments, and the books and records of the assessing authorities, show the land, separate from the improvement thereon, as assessed on April 1, 1926, was grossly under-assessed; that such under-valuation or assessment was admitted to relators by the board of review in a large number of instances, but the board notified relators that no changes in land values, as distinguished from value of improvements, would be made during 1926 for any reason whatever, and that in accordance with such announced plan the board of review refused to change the land values in a single one of 8000 complaints filed by relators, the board stating that no change in land values would be made until the quadrennial assessment in 1927.

Paragraph 14 charges the board of review refused to hear any substantial number of the 9200 complaints, and all its words and acts treated the action of relators in filing the complaints as an unwarranted, meddlesome interference and failed and refused to hear substantially all of the complaints filed by relators, which was a manifest injustice and abuse of discretion, although the assessments of the property described in the complaint were unequal, unjust or altogether omitted.

Paragraph 15 alleges that November 29, 1926, relators served a written demand on the board of review that public hearings forthwith be held on the complaints filed by them, but since the demand was made the board of review had not, down to the time of filing the petition, complied with or acknowledged receipt of the demand.

Paragraph 17 alleges relators furnished the written information in support of their complaints requested by the board of review, but the board and its members have evaded their duty and refused to perform it with regard to the very large majority of said complaints and have failed and refused to hear and consider such complaints.

Paragraph 18 alleges the passage of the usual tax levy ordinance by the city of Chicago, which included the levies for the city and also for the board of education of the city, and that under said ordinance the relators would receive their respective proportions of all taxes levied on property in the city of Chicago; that the failure of the board of review to perform its duty would result in large financial loss to relators. The petition contains a table prepared and certified by the county clerk of Cook county in 1925 showing the respective proportions of tax levies made in the city of Chicago to be received by said city and the board of education. The petition alleges that the relators will be entitled to approximately two-thirds of the taxes levied for the year 1926, and that relators have a peculiar and special interest in the subject matter of the petition.

Paragraph 19 sets out a table prepared to illustrate the interest of relators and the financial loss to them of a failure of the board of review to consider their complaints, and paragraph 20 also sets out a table prepared for that purpose.

Paragraph 21 alleges that notwithstanding the duties of the board of review, under the law, as to hearing the complaints, the board adjourned all hearings on December 3, 1926, and said board, if not commanded by *mandamus*, will do nothing further with respect to the complaints filed by relators.

Paragraph 22 charges that the Revenue act of 1898 makes it the duty of the board of review to provide rules and regulations for the conduct of business before it, and sets out section 39 of the act, (Cahill's Stat. 1925, p. 2047,)

as follows: "The board of assessors and the board of review shall make and publish reasonable and proper rules for the guidance of persons doing business with such board and for the orderly dispatch of business." The petition charges the board of review has never made and published and did not have rules and regulations required by law, and that the failure to make and publish rules is the chief means by which the board of review was able to deny and obstruct the efforts of relators with respect to hearings of complaints.

The prayer of the petition is that the writ of *mandamus* issue forthwith, commanding the board of review and its members "forthwith to revise the assessments against the property described in the said 9200 complaints so filed by the relators and each of them, and to hear and consider, in accordance with law, each of the said 9200 complaints so filed by the relators, and further commanding the said board of review of Cook county   *   *   *   to make and publish reasonable and proper rules for the guidance of persons doing business through such board and for the orderly dispatch of business, as required by law."

In addition to filing a general demurrer appellees filed a special demurrer assigning the following causes: (1) The matters and things alleged in the petition do not show it is the duty of the board to value and assess the stock of corporations for the year 1926; (2) the allegations of the petition do not show whether estates of decedents have been assessed for the year 1926 and do not show it is the duty of the board to make any assessments against said estates; (3) the allegations of the petition do not show the fair cash values of real estate April 1, 1926, have been equalized as required by law; (4) the petition does not show the capital stocks of banks have not been properly assessed, and does not show the assessable fair cash value April 1, 1926, has been equalized and the assessed value of the real estate deducted; (5) the petition does not show it is the duty of

the board to hear the complaints alleged in the petition to have been filed by relators; (6) the allegations of the petition do not show it is the duty of the board to convene for the purpose of revising the assessments with respect to which complaints are alleged to have been filed.

The material provisions of the statute which seem necessary to be considered are found in section 35 of chapter 120. (Cahill's Stat. 1925, p. 2045.) Said section makes it the duty of the board of review in any year, whether the year of the quadrennial assessment or not, to assess property not assessed but omitted; to assess omitted property of a decedent in the name of the executor, administrator or trustee, and for the purpose of enforcing the provisions of the act the several taxing bodies interested are authorized to employ counsel and take the necessary steps to enforce the assessment of omitted property. Paragraph 4 of said section provides that on complaint in writing that any property described in the complaint is incorrectly assessed, "the board shall review the assessment, and correct the same, as shall appear to be just." The complaint, to affect the current year, is required to be filed on or before August 1 of any year, or ten days after the assessment books are filed with the board, if they are not so filed by July 20. After enumerating certain powers of the board the statute provides that all complaints of errors in assessments shall be in writing and filed with the board of review in duplicate. The complaints shall be classified and docketed in books kept for that purpose, which shall always be open to public inspection, and the complaints shall be heard until all are disposed of. The section provides that except in the year preceding the quadrennial assessment the board shall hold public sessions at its rooms and continue said sessions from day to day until all complaints have been disposed of.

It is well settled and generally understood that a petition for *mandamus* must set forth every material fact necessary to show that it is the duty of the persons against

whom the writ is sought, to perform the act sought to be compelled. The demurrers admit the allegations of the petition in so far as they are well pleaded, but appellees contend there are no facts averred which would authorize granting the writ; that the averment of conclusions of law cannot take the place of averment of facts, and the demurrers do not admit the conclusions averred in the petition.

In *People* v. *Sellars*, 179 Ill. 170, the relator in the petition for *mandamus* was a tax-payer, and the petition alleged certain personal property had been omitted and not assessed for certain years and no taxes paid thereon. The petition alleged the relator had demanded of the county clerk that he extend the taxes as required by law, but that the clerk refused to charge the property with the arrearage of taxes, and as a result of such refusal the county and various municipalities were deprived of the revenues to which they were entitled. The petition alleged that the assessor had discovered the omitted property, had listed, assessed and placed on the assessment and tax books said property and filed the list in the office of the county clerk, but that the clerk refused to extend the taxes as required of him by law. A writ of *mandamus* was prayed to compel the county clerk to charge the property with the arrearages of tax which might have been assessed, with ten per cent interest from the time the same should have been paid. A general and special demurrer was interposed, which the circuit court sustained and dismissed the petition. The judgment was affirmed by this court. In deciding the case the court said: "The law is well settled that a writ of *mandamus* will not be issued unless the petitioner shows a clear legal right to the writ. A party cannot be compelled to perform an act by *mandamus* unless it is made to appear affirmatively that it is his clear duty to do so. The party who seeks to compel the performance of an act must set forth every material fact necessary to show that it is the plain duty of such party to act in the premises before the

courts will interfere. (*Hall* v. *People,* 57 Ill. 307.) Do the facts set out in the petition show that it was the duty of the county clerk to extend the alleged amounts returned to him by the assessor as an additional assessment on certain property in the town of Mattoon? We think not. No description of the property is given in the petition nor is the name or names of the owners of the property disclosed. The fact that there was personal property in the town of Mattoon which was not assessed does not establish the fact that it was liable to be assessed or that the assessor had the right to make the additional assessment. Under section 2 of the Revenue act a large amount of property is exempt from taxation. If this property was exempt the assessor had no right to assess it. It devolved upon the petitioner to show, by the petition, facts, so it might be known whether the property was liable to assessment or not. The petitioner says in his petition it was liable, but that was not sufficient. That was a conclusion of law, which was not a proper averment. (*People* v. *Village of Crotty,* 93 Ill. 180; *People* v. *Davis,* 112 id. 272.) Suppose the property consisted of government bonds. The facts set out in the petition might all be true and yet the assessor would have no right to return the property to the county clerk for assessment nor would it be the duty of the clerk to extend it on the tax books."

The *Sellars case* was cited on the point mentioned in the quotation from the opinion in that case, in *Yates* v. *People,* 207 Ill. 316, in which case the court held that a party seeking to compel the performance of an act must set forth every material fact necessary to show that it is the duty of the party sought to be compelled to act in the premises. The writ should not be granted in doubtful cases.

With reference to the estates of decedents the petition alleges that in 300 separate estates selected, relators filed written complaints charging that each of them was under-assessed by the authorities of Cook county. There is no

allegation of any facts showing that any property of any of the estates was liable to assessment and that taxation thereof was omitted.  The petition charges that 8000 parcels of real estate were flagrantly under-assessed by the assessing authorities.  Exhibits are attached to the petition to support the allegation of under-assessment.

In *People* v. *Illinois Central Railroad Co.* 273 Ill. 220, the court said, at page 249: "To assess implies more than to fix the full valuation at a given rate.  It means to impose a tax according to some method or upon a basis of assessed valuation which may be provided by law and which does not violate the mandate of the constitution that every person and corporation shall pay a tax in proportion to the value of his or its property.  It includes all the steps which the law requires to subject the property to the tax. The State tax levied under the provisions of section 22 of appellant company's charter being practically an ordinary State tax, to levy it on a basis of full value when the State taxes on all other property were levied at a much less value would be violative of every principle of uniformity and equality of taxation as laid down in the constitution.  This should not be done even though the standard or basis fixed by the public authorities for the assessed valuation is less than that fixed by the statute.  The requirements of the constitution that there shall be uniformity and equality in taxation must control over any statute or practice of assessing officers, so that the properties of persons and corporations shall pay a tax in proportion to their respective values."  In that case the Auditor disapproved the schedule of the railroad company's stock, property and assets giving the value of the property to be assessed for State taxes and made a re-valuation and assessment greatly increasing the valuation.  The case was referred to a commissioner appointed by this court to take evidence and report the same, together with his conclusions of law and facts.  The commissioner reported what he found the value of the property to be, and

that that value should be equalized at seventy per cent of the total value and the tax levied on one-third of that amount.

In *People* v. *Chicago, Burlington and Quincy Railroad Co.* 300 Ill. 399, the custom in Massac county, where the property was situated, was to assess property for taxation at not more than fifty per cent of its fair cash market value. The property assessed was railroad ties, the fair cash market value of which was $556,800. The railroad company, by its agent, appeared before the board of review and requested that the ties should be assessed for taxation at not more than fifty per cent of their market value, according to the custom of that county. The board assessed the ties at the full market value and refused to equalize or reduce the amount. The court said: "It has been held by this court that taxing authorities have no justification in withdrawing any property from the protection of the constitutional principle of uniformity of taxation, as uniformity of taxation is required under the constitution, and that a person cannot be compelled to pay a greater proportion of taxes, according to the value of his property, than another property owner. * * * The evidence, in our judgment, shows clearly that according to the method, system and practice prevailing, the assessable value of the property in Massac county was not fixed at its true cash value but at not more than fifty per cent of the same, and under the authorities already cited it must be held that the valuation of appellant's property was fixed arbitrarily at its cash value rather than in accordance with the custom, method and practice that obtained in valuing other property in that county, and that therefore the board of review fixed such valuation, as shown on this record and under the authorities cited, arbitrarily, and the objections of the appellant as to the tax should have been sustained."

This court quoted from the annual report of the Illinois Tax Commission in *People* v. *Stewart,* 315 Ill. 25: "It is

to be remembered that under the law, in each instance, every piece and part and parcel of property, whether real or personal, including moneys and credits, should be taken at its full, fair cash market value by the assessing authorities, and by reason of custom and such general use as to become a rule which every tax-payer is entitled to the benefit of, sixty per cent of such full value thus determined should be taken for the full equalized value to which the tax rate will be applied." It thus appears that from uniform practice and judicial construction assessments for taxing properties should be equalized, and there is no averment in the petition that this has not been done as to properties complained of, or that the assessment of the property is less than the equalized value of property in the assessment district.

Our Revenue act (Cahill's Stat. 1925, sec. 3, par. 4, p. 1999,) requires that the capital stock of all domestic companies and associations, except as in the act specified, shall be valued by the State Board of Equalization (Tax Commission) so as to ascertain and determine the fair cash value of the capital stock, including the franchise, over and above the assessed value of the tangible property of the company, and that such board (Tax Commission) shall adopt rules for ascertaining the fair cash value of the capital stock as may seem equitable and just, and the rules so adopted, if not inconsistent with the act, shall be binding, subject to change or alteration as may be found necessary from time to time. The petition contains no allegation that the capital stock of the domestic corporations complained of belongs to any of the classes mentioned in the statute as being assessable. The allegation is that the capital stock of the corporations was assessable by the assessing authorities of Cook county, which the *Sellars case* and other cited cases say is a conclusion. The Revenue act (Cahill's Stat. 1925, sec. 2, par. 3, p. 2011,) requires the Tax Commission to prescribe rules and regulations, not

inconsistent with law, for local assessment officers relative to the assessment of property for taxation, which rules shall be binding upon the local assessment officers and be obeyed by them. The Tax Commission, as is well known, has prescribed rules. The petition does not aver that the assessments complained of were not made in conformity with the rules.

The allegation in the petition as to capital stock of State and National banks is, that they were assessed at a valuation lower than was lawful, equitable and proper. That is simply a conclusion and not the averment of any fact showing petitioners' right to the writ. The statute provides how the value of shares of capital stock of banks shall be determined, (Cahill's Stat. 1925, sec. 35, p. 2004,) and no facts are averred in the petition to show that the assessment was not made as required by law.

The petition prays that a writ be issued commanding the board of review and its members to make and publish reasonable and proper rules for the guidance of persons doing business with the board and for the orderly dispatch of business, as required by law. Paragraph 22 of the petition sets out section 39 of the Revenue act of 1898, which requires the board to make and publish proper rules, and then avers that the board has not complied with the law and has never made and published such rules and does not have a set of rules, as the law requires. The petition further avers that the failure to comply with the law in that respect required of relators great labor and expense which would not have been required if rules had been published in obedience to law. No form of complaint was provided by any rule of the board which the petition avers would have greatly reduced the difficulties of relators, and such failure to prescribe rules was a means by which the board obstructed efforts of relators and other complainants to enforce their rights. The petition alleges the failure of the board to make and publish rules has caused great expense to relators

and others filing complaints and great uncertainty as to enforcing their rights. Appellees' answer to this paragraph of the petition that the law requires rules to be made for the guidance of parties doing business with the board is, that the petition does not show that relators are parties doing business with the board and that they receive a large portion of the taxes, but the rules and regulations required by the statute are intended for the guidance of tax-payers whose property is assessed. We do not think that answer is meritorious. The rules and regulations required are for the benefit of the bodies ultimately receiving the taxes as well as the tax-payer who pays the tax. The petition shows a clear right in relators to compel the board of review and its members to act in the premises. The law made it the duty of the board to act, and it may be compelled by the writ of *mandamus* to act in the discharge of the duty enjoined by law by making and publishing rules. Of course, the writ cannot command the board as to the form of the rules, but they must be of a character contemplated by the statute. Under a petition for a writ of *mandamus* the court is not bound to grant it for all the relief asked but may grant the relief so far as relators show a right to it. (*People* v. *Webb*, 256 Ill. 364.) The board and its members have a right to exercise their judgment and discretion as to the form and character of the rules, but they have no discretion, in the discharge of the duty enjoined upon them, whether or not to make and publish rules. *People* v. *Board of Supervisors*, 294 Ill. 579.

We are of opinion the petition does not set forth facts necessary to show a plain duty of the board of review to review the assessments complained of, but it does contain sufficient averments to show the plain duty of said board to make and publish rules as required by law, and for those reasons the judgment will be reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*