(No. 25510.—)

CARL G. STOCKHOLM, Plaintiff, *vs.* WILLIAM B. DALY *et al.*
Defendants.

*Opinion filed October 15, 1940—Rehearing denied Dec. 4, 1940.*

WILSON and FARTHING, JJ., dissenting.

T. A. SHEEHAN, for plaintiff.

THOMAS J. COURTNEY, State's Attorney, and BENJA-MIN S. ADAMOWSKI, (WILBERT F. CROWLEY, WILLIAM J. TUOHY, JACOB SHAMBERG, FRANK J. CHRISTENSON, CLEMENT D. CODY, and JOSEPH B. CROWLEY, of counsel,) for defendants.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an original petition for a writ of *mandamus* to compel defendants, members of the board of election commissioners of the city of Chicago, and Edmund K. Jarecki, judge of the county court of Cook county, to destroy the ballots used at certain elections held in the city of Chicago.

Plaintiff's petition alleges that he is a resident, elector and taxpayer of the city of Chicago; sets out the statute creating the board of election commissioners and alleges that applicable election statutes require that such ballots shall be preserved for six months and thereafter shall be destroyed, except in the event of the pendency of an election contest, in which event such ballots shall not be destroyed until after such election contest is finally determined. The petition alleges the holding of general elections in April and November, 1938, and February, April, and June, 1939, in the city of Chicago, and that the ballots used in connection with those elections were stored as provided by statute and more than six months have elapsed since the date of the last of said elections; that no election contests were pending; that none of the ballots have been impounded by order of court and no *subpoena duces tecum* or other lawful process has been issued to compel the production of any of said ballots before any court of competent jurisdiction, or any grand jury. The petition also alleges that the State's attorney of Cook county filed an information in the county court of that county charging certain named persons with the violation of the election law, and the defendant Jarecki, judge of the county court, entered an order November 10, 1939, appointing James F. Connery, an employee of the board of election commissioners, a special commissioner to supervise a re-counting of the ballots cast at the general elections of November, 1938, February, April, and June, 1939, and requiring that he make a full report of the re-counting, as directed in the order. The petition alleges that this order of the county judge is null and void; that, not-

withstanding said special commissioner was actively engaged, with the assistance of numerous employees and a handwriting expert, at a great expense, in making a re-count of the ballots cast at said elections, that said re-count and storage of ballots beyond the term provided by statute for their destruction created an expense necessary to be paid by the taxpayers of said city, and prayed that defendants be ordered to show cause why the writ of *mandamus* should not issue directing them to comply with the terms of the statute and destroy said ballots cast at said elections and all other elections prior thereto.

Defendants' answer averred that, so far as they officially knew, there are pending three certain election contests, arising out of these elections; that a large number of cases are either pending or undisposed of involving malfeasance by judges and clerks of election, and others authorized to take part in elections, or involving persons who wilfully made false canvasses or official statements of votes cast, knowing them to be false. The answer alleges that more than eighty cases are pending in the county and superior courts, and gives the title of each; that these cases charge violations of law in the elections referred to in the petition. The answer alleges that the ballots constitute evidence for the People in those cases. The answer avers that the ballots used in said elections have not been destroyed for the reasons: (1) Pendency of the designated cases; (2) defendant Judge Jarecki has directed that the ballots be not destroyed because of the pendency of the named cases, and, (3) that the judge of the county court has not designated two electors, as provided for by the statute, for the reason that said cases are pending and undisposed of, and further, for the reason that as county judge he firmly believed and still believes that the use of such ballots is and will be necessary in pending and undisposed of cases, and that as it had been shown to him in open court that fraud, criminal neglect and misconduct have been perpetrated by judges

and clerks of election, by other election officials and others, in the casting, counting, tabulating, recording and reporting of votes and results at such elections, as well as in the manipulation of such returns for the purpose of falsifying and improperly reporting the same, and that many persons are guilty of criminally interfering with the proper conduct of such elections, and, further, that he believes it his duty as judge of the county court to order said board of election commissioners not to destroy said ballots. The defendant county judge admits that he directed said board to preserve and retain the ballots as evidence for the purpose of prosecution and punishment of said offenders against the law applicable to such offenses, and alleges that all of his acts were done in the exercise of his judicial discretion. The answer further avers that the ballots were presented to the grand jury as evidence and are, in part, the basis for indictments voted by said body, and now necessary to be preserved and used as evidence in the prosecution of said indictments.

It is also alleged that past and present investigations have disclosed that vote frauds and irregularities in connection with elections in the city of Chicago and Cook county are numerous and of a widespread nature and are a growing menace to the honesty and regularity of elections; that any expenditure of money in connection with the examination or investigation of said election frauds will not affect plaintiff beyond an infinitesimal amount and his proportionate share of increased tax burden, if any, would amount to but a few cents; that because of such fraud, conspiracy and irregularities in such elections, the defendants are under a duty to preserve the said ballots, and the expenditures complained of are necessary and proper in the aid and assistance in the enforcement of the laws of Illinois and to preserve the sanctity of the ballot.

Plaintiff demurred to the answer thus attacking its sufficiency as a matter of law. He argues that the statutes

impose a mandatory duty upon defendants to destroy the ballots after the expiration of six months from the date of the holding of such election, provided no election contest is pending and undisposed of.

Defendants contend that the granting of the writ will abort and terminate investigation into illegal acts and doings in connection with the conduct of elections and prevent the enforcement of the laws and the preservation of the sanctity of the ballot in Illinois. They also contend that it is not the legislative intent that ballots be destroyed after six months when they are the necessary and the best evidence of vote frauds, but, on the contrary, it is established law in Illinois that the ballots being in existence, their value as evidence is not affected by lapse of time or the failure to destroy them. They further contend that plaintiff's collateral attack upon the investigation into illegal acts in connection with the conduct of elections and prosecutions concerning the same, cannot overcome the valid justification for the non-destruction of ballots, and that since plaintiff's demurrer admits the truth of facts alleged in the answer of defendants he does not show a clear right to the writ. The prayer of the petition is that the defendants be required to take the steps prescribed by the statute to bring about the destruction of the ballots.

The gist of plaintiff's contention is that the statutes requiring the destruction of ballots, except where a contest is filed and undisposed of, are mandatory, and that, therefore, in law, the ballots have no existence in such case for any purpose whatever after the period of six months following the election have elapsed. The statutory provisions referred to are section 59 of the general Election act and section 27 of the Ballot law of 1891. (Ill. Rev. Stat. 1939, chap. 46, pars. 59, 316.) Section 59, after providing for the method of stringing and sealing the ballots and delivering them with the poll-books to the proper officer, further provides that such officer "shall carefully preserve said ballots for six (6)

months, and at the expiration of that time said clerk shall remove the same from the original package and grind and shall sell the same, together with all reserve and unused ballots, to the highest and best bidder. * * * Provided, if any contest of election shall be pending at such time in which such ballots may be required as evidence, the same shall not be disposed of or sold until after such contest is finally determined."

Section 27 of the Ballot law of 1891, (paragraph 316, *supra,*) after directing the announcement of the vote by the judges, and stringing and sealing the ballots directs that they be returned to the proper clerk or the board of election commissioners, as the case may be, who shall preserve them for six months, and at the expiration of that time shall destroy them by burning. This section provides that ballots shall be destroyed in the presence of the official custodian thereof and two electors, and members of the two leading political parties, who shall be designated by the county judge. "Provided, that if any contest of the election of any officer voted for at such election shall be pending at the expiration of said time the said ballots shall not be destroyed until such contest is finally determined," etc.

The plaintiff insists that it is necessary only to read the sections above referred to to determine that the provisions of the statute are mandatory. He cites in support of his position *Keenan* v. *People,* 58 Ill. App. 241, and cases from other jurisdictions. This court has had occasion to pass upon the question whether, upon the insistence of a citizen, the ballots shall at all events be destroyed after six months. In *People* v. *Newsome,* 291 Ill. 11, Newsome was found guilty of violating section 86 of the general Election law. His conviction was affirmed by the Appellate Court and upon review in this court he contended that the ballots which he had been charged with altering were improperly admitted in evidence for the reason that more than six months had elapsed since the election at which they were voted,

and no election contest was pending, and since the statute requires that the county clerk destroy them, the ballots had no legal existence in law. It was, however, held that as the ballots were actually in existence, their value as evidence was not affected by lapse of time or the failure of the county clerk to destroy them, and they were competent as evidence.

In *People* v. *Lueders*, 269 Ill. 205, the State's attorney of Cook county sought the aid of this court by a writ of *mandamus* to compel the members of the board of election commissioners of the city of Chicago to produce the ballots cast in a certain precinct in that city at an election held some two months before the presentation of the petition. The petition alleged that on May 6, 1915, the grand jury of Cook county was investigating charges of violation of the election laws in the said precinct and that the election commissioners refused to produce before that body the ballots cast in that precinct. The petition also alleged that the ballots were necessary as evidence before that body. It was argued by the respondents in that case that the production of the ballots for the inspection of the grand jury would violate the secrecy of the ballot required by both the constitution and the statutes. This court held that while it was the design of the constitution and statutes that every possible means shall be provided to preserve the secrecy of the ballots, yet such provision for secrecy applied to the preparation and casting of the ballots rather than their preservation afterwards. It was there pointed out that if the provisions for secrecy of the ballot were to receive literal construction it would be impossible to determine for whom any particular ballot had been cast, since the secrecy of the ballot would be destroyed by the judges and clerks when they inspected them for the purpose of counting the votes.

It was there also argued that the express exception allowing ballots to be opened and re-counted in election contests excluded all other exceptions. In overruling that contention this court pointed out that the exception is by way

of a "proviso" and does not provide that in no event, except in case of election contest, shall the ballots be opened and examined. While it is, in that opinion, recognized that the General Assembly has the power to provide that ballots shall not be opened or inspected for any other purpose and that, had it done so, such ballots could not be produced as evidence before a court or grand jury in any case not involving an election contest, yet it was also held that a consideration of the general Election laws with the City Election act, the latter of which was revised and reenacted in 1899, discloses that the legislature did not intend to limit the exceptions to the provisions requiring the destruction of the ballots to the election contests only; that this is shown by section 5 of article 6 of the City Election act, as reenacted, which provides that making false canvass or false return or other acts therein designated shall constitute a felony, and that as the Ballot act of 1891 is to be construed with the City Election act, with the intent expressed in section 5 of article 6 to provide punishment for the offenses therein enumerated, it is clear and unmistakable that the ballots, which would always constitute the best, and, in many cases, the only evidence of commission of the offense charged, were to be used in the prosecution of violations of the election laws. It was also pointed out that as the General Assembly did not indicate the ballots were not to be used in such cases it would be absurd to hold that although the ballots were highest and best evidence to be used in prosecutions under section 5 of article 6 it was not the intent of the City Election act that they should be preserved and opened for that purpose; that section 5 of article 6 of the City Election act and section 27 of the Ballot act (paragraph 316, *supra*) must be construed together and if there be any repugnancy section 27 must give way to the provisions of the City Election act since it was reenacted after section 27 of the Ballot act.

Counsel for plaintiff says that the later reenactment of the Election act does not make it an act passed after section 27 of the Ballot law, because it was but a reenactment of an act passed before section 27. However that may be, the fact remains that the reenactment of section 5 of article 6 of the City Election act after the passing of section 27 of the Ballot law must be considered as the last expression of the General Assembly on the subject, and it would be absurd to say that notwithstanding the reenactment of the provisions of a statute after the passage of an act inconsistent with such statute, the latter is to have no effect, because it was but the reenactment of an act passed before the passage of such inconsistent act. Although nearly twenty-five years have elapsed since the decision in *People* v. *Lueders, supra,* during which time it is presumed that the General Assembly knew of the view of this court on the matter, yet no act had been passed by that body indicating that the provisions of section 27 of the Ballot act are to be construed strictly and as mandatory.

It is well pointed out by the Supreme Court of Louisiana in *State* v. *Baker,* 64 So. 993, that: "So long as the right to prosecute for the crime is not prescribed, the right of the State to preserve the evidence by which the commission of the crime is to be established cannot possibly be prescribed. In other words, it would be an entirely unreasonable and inadmissible construction upon said statute, and giving it an operation certainly never contemplated by the legislature, to hold that the evidence, by which a crime is to be established and the criminal brought to justice, is to be destroyed. True, the statute apparently so requires, but there could not possibly be any reason for such a thing, whereas, there stands against it an obvious and most powerful reason, a reason of paramount importance to society, that the evidence of a crime should not be destroyed, and therefore we repeat that to hold that these ballots actually and presently

needed as they are, as evidence in a criminal proceeding, set on foot by the law officers of the State, should be destroyed, would be to adopt a construction manifestly never contemplated by the legislature."

As shown by the answer of the defendants and admitted by the demurrer in this case, there are a large number of cases pending in the courts of Cook county charging irregularity in elections and violations of election laws. It would obviously run counter to the holdings of this court in the cases cited, to say that the General Assembly intended that these ballots, now in existence and properly guarded, can not be used as evidence in those cases, although they may constitute the only evidence of the violation of election laws. To require the destruction of these ballots under such facts would be to destroy by judicial order that which is not only evidence in a pending criminal investigation but it may be the only evidence. To so require, in the absence of positive legislative mandate, would be to enter into an unthinkable participation by this court in the frustration of the due administration of justice. The General Assembly cannot be supposed to have intended to require that the course of criminal justice should be in this manner thwarted.

The answer of the defendants admitted by the demurrer presents a situation justifying the refusal of the writ in this case. The rule is settled in this State that one who would seek a writ of *mandamus* must show a clear right to that writ, and where serious consequences will result, the court may exercise discretion in granting or refusing it. (*Raclin* v. *Village of Winnetka,* 369 Ill. 532; *Parrish* v. *Miller,* 336 id. 630; *Kenneally* v. *City of Chicago,* 220 id. 485.) Plaintiff has not shown a clear right to the writ. The petition is denied.

*Writ denied.*

WILSON and FARTHING, JJ., dissenting:

The applicable sections of the general Election act and the Ballot law provide that the ballots shall be preserved

for six months after an election and shall then be destroyed except in cases where there is a contest pending. This provision is to further protect the secrecy of the ballot. This court, in *People* v. *Leuders,* 269 Ill. 205, has held that the grand jury has a right to open the ballot boxes where charges of fraud have been made. This court also held in the same case that where indictments are voted the ballot boxes necessary for the prosecution of such indictments may be impounded by the court to be used as evidence. This ruling would be applicable to such contempt proceedings as are inaugurated by the county court. It is our opinion, however, that as to all precincts not affected by election contests, pending indictments or contempt proceedings, the ballots should be destroyed in conformity with the plain mandates of section 59 of the general Election act and section 27 of the Ballot law of 1891.

There appear to be approximately 200 pending cases which means that over 3000 ballot boxes and their contents are in storage. As to these, it is our opinion that the prayer of the petition should be allowed and the court permitted to retain only such ballot boxes as are pertinent to pending prosecutions and election contests. This would save the expense of storage and lessen the possibility of promiscuous and unauthorized inspection. The power to enter a severable order in a *mandamus* proceeding is recognized. We are not bound to grant all the relief sought under a petition for a writ of *mandamus* but may grant the writ so far as the relators show a right to it. *People* v. *Board of Review,* 326 Ill. 124.

For the reasons stated, we are unable to concur fully in the majority opinion and are constrained to record a dissent.