PATRICK B. RYAN

*v.*

E. SANFORD.

*Filed at Ottawa May 14, 1890.*

1. APPEAL—*whether a freehold involved—on bill to redeem.* Where a party, by bill, seeks to redeem his land sold under a power in a mortgage, on the ground that the purchaser agreed to give that right on payment of the principal and interest, and the validity of the mortgage, or the sale under it, is not questioned, no freehold is involved, and an appeal from a decree dismissing the bill for want of proof, lies to the Appellate Court.

2. In such case, a decree in favor of the complainant would only establish his right to redeem—a right he might or might not avail himself of. The gain or loss of the freehold depends upon subsequent acts. Therefore, one party does not necessarily, from the decree, gain, and the other lose, the title to the land.

3. CHANCERY—*preserving the evidence—presumption.* At law, when the bill of exceptions does not purport to contain all the evidence, it will be presumed sufficient evidence was heard to warrant the verdict. But in chancery the rule is otherwise. There it will not be presumed that any other proof was made than what appears in the record, and if the proof thus appearing does not sustain the decree, it will be reversed.

4. A decree for the defendant dismissing the bill on its merits, needs no evidence to support it, and it must stand, unless it affirmatively appears that there was evidence adduced by the complainant, or heard at the trial, which entitled him to the relief prayed for in the bill.

5. SAME—*depositions—as a part of the record.* Depositions properly filed in a chancery cause are a part of the record, notwithstanding there is no certificate of evidence, and no other evidence will be presumed to have been heard.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Kankakee county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. PATRICK B. RYAN, for the plaintiff in error.

Mr. E. SANFORD, *pro se.*

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill brought by Ryan against Sanford to redeem certain land from a sale under a power in a mortgage. On the 1st day of January, 1877, Ryan made and executed his promissory note for $650, payable to John Trowbridge, at Poughkeepsie, New York, three years after date, with interest at the rate of ten per cent per annum, payable annually. On the same day Ryan executed and delivered to Trowbridge, as security for the payment of said note, a mortgage upon the land in question. Both the note and mortgage contained a provision that if default should be made by Ryan in the payment of any portion of the taxes on said land ten days before the sale for taxes, or in the payment of any portion of the interest on the note and mortgage on the day on which the same should become due, the full amount of both principal and interest should immediately become due and payable. It was also provided in the mortgage that, upon such default, the mortgagee or his assigns might sell and convey said land, after giving certain notice, and apply the proceeds to the payment of the expenses of sale, attorneys' fees, and the principal and interest due on the note.

Said mortgage, as seems to be admitted, was subsequently assigned to George Wilkinson, and on the 6th day of August, 1878, Ryan being in default in the payment of the first installment of interest and also in the payment of taxes, said Wilkinson advertised and sold said land under the power contained in the mortgage. At said sale Sanford bid the sum of $400, and being the highest bidder, the land was struck off and sold to him. Ryan afterwards accepted a lease of said land from Sanford and remained in possession of it as his tenant for three years, paying as rent the sum of $75 for the first year and $80 for each of the following years. At the expiration of said tenancy Sanford sought to obtain possession, and thereupon Ryan filed this bill.

The bill alleges, in substance, that on the day of the date of said mortgage, Ryan, being in need of money, applied to Sanford for a loan of $650; that Sanford agreed to loan him said money for three years at the unlawful and usurious rate of twelve per cent per annum; that Ryan, to secure such loan, executed said mortgage, but received from said Sanford only $400 of said money, the residue being retained by Sanford as interest; that the mortgage was executed to Trowbridge, who was unknown to Ryan, and who was a confederate of Sanford, to better carry out Sanford's fraudulent scheme to cheat and defraud Ryan; that on or about the date of said sale, Wilkinson, to whom a pretended assignment of said mortgage had been made, sold and conveyed said land to Sanford for $400; that the making of the mortgage, its assignment to Wilkinson, and the sale by Wilkinson to Sanford, were mere devices to evade the usury laws, and to cheat and defraud Ryan out of said land; that Sanford, after he got his deed from Wilkinson, told Ryan that if he would consent to be tenant at will of Sanford, he might have said land back by paying the money and interest due on the mortgage; that Ryan being ignorant and poor, and being in fear of Sanford, signed whatever papers Sanford told him to, the consideration for his so doing being Sanford's promise that he should have his land back; that Ryan still lives on and occupies said land and has done so ever since said pretended sale, and has paid Sanford as interest, rent and taxes about $300; that he has tendered to Sanford the amount due on said mortgage and demanded a conveyance of said land, but that Sanford refuses to take the money or convey to him the land, and that he now brings said money into court to be paid to Sanford as the court shall direct. The bill prays for an answer, without oath, for an accounting, and for a decree requiring Sanford to convey said premises to Ryan upon payment of the amount found to be due, and also a general prayer for relief.

Sanford answered denying the material allegations of the bill, and particularly those charging usury, those charging confederacy between Sanford, Trowbridge and Wilkinson, and the allegations of an agreement to permit Ryan to redeem said land by paying the principal and interest due on the mortgage. Said answer alleges the fact to be that Ryan borrowed said money of Trowbridge, and executed to him said note and mortgage to secure the payment of said loan and interest; that said securities were duly assigned by Trowbridge to Wilkinson, and that Wilkinson, as assignee, foreclosed said mortgage by advertisement and sale, Sanford becoming the purchaser, and receiving from Wilkinson a deed therefor; that Ryan willingly and voluntarily rented said premises from Sanford, and at the time of filing said bill was in possession as Sanford's tenant.

At the hearing, which was had on pleadings and proofs, a decree was entered dismissing the bill for want of equity. Ryan appealed to the Appellate Court where said decree was affirmed, and by a further appeal he now brings the record to this court.

The only evidence preserved in the record, or which so far as appears was adduced at the hearing, consists of the depositions of Ryan, Wilkinson and Sanford, which seem to have been taken in a former suit between the same parties, but which, by leave of the court, were withdrawn by the parties from the files in that case and filed and used in this.

It appears from Ryan's deposition that he had no acquaintance with and had never seen Sanford until September, 1878, after the mortgagee's sale; that he borrowed $650 of Mr. Bonfield, who was acting as Sanford's agent, and was told by Bonfield that it was Trowbridge's money; that the interest agreed upon was nine per cent per annum, payable annually, and that he agreed to pay three per cent commissions; that he received the money from Bonfield, the amount received being $596.86; that in September, 1878, after learning that the

property had been sold under the mortgage, he went to see Sanford to ascertain if he would take back his money and interest and such costs as he had incurred but that Sanford refused to do so, but offered to take a certain sum of money which the witness does not state precisely, but which he says was over $900, and that Sanford gave him a writing embodying such offer; that he subsequently concluded not to accept said offer and thereupon threw said paper away. He claims that on the occasion of said visit he tendered to Sanford the amount due on the note and mortgage, but on cross-examination he admits that he exhibited no money to Sanford and offered him none, and that no sum of money was spoken of except the nine hundred and odd dollars which Sanford offered to take for the land.

Wilkinson testifies that the mortgage was not assigned by Trowbridge to the witness, or the sale made, for the purpose of evading the usury laws, or of cheating and defrauding Ryan out of said land; that Sanford, so far as witness knew, had no interest in the mortgage or land until after the sale; that the sale was public and open, and that the land was struck off to Sanford because he was the highest bidder; that Ryan had long been delinquent in the payment of interest, and had allowed the property to go to sale for taxes, and that the whole amount of principal and interest thereby became due and payable, and the sale was therefore made; that the assignment from Trowbridge and the sale were fair in every respect, and that the witness knew and had heard of no usury whatever connected with the loan.

Sanford's deposition was, in substance, that he had been engaged for several years in the business of obtaining loans for farmers on their lands; that in the latter part of 1876 he received from Mr. Bonfield an application by Ryan for a loan of $650 at ten per cent interest, Ryan agreeing to pay witness four per cent commissions for his services; that witness forwarded the application to Mr. Trowbridge at Poughkeepsie,

New York, to see if he would take the loan; that Trowbridge accepted the application and forwarded the $650 required to the witness, and that Ryan having forwarded to witness, through Bonfield, the note and mortgage in question, properly executed and recorded, and also an abstract of title, witness sent said papers to Trowbridge and remitted said money to Bonfield for Ryan, after deducting $26, the amount of his commissions; that Trowbridge had no knowledge of the commissions thus paid by Ryan; that witness did not act as Trowbridge's agent, and was paid nothing by him for his services, and that witness had no interest whatever in the mortgage or the money thereby secured. He specifically denies the several allegations of the bill charging usury, and also those charging collusion between him, Trowbridge and Wilkinson to evade the usury laws, and to cheat and defraud Ryan, and also testifies that he made no agreement with Ryan, after the sale, to allow him to redeem the land by paying the amount of the note and mortgage, but that he offered to sell him said land for $950, and at a later period for $1000, on certain terms as to payment, and that Ryan neither accepted said offers or made any effort to avail himself of them; that afterward Ryan voluntarily surrendered said premises to the witness and took from him leases therefor for three successive years, paying as rent $75 for the first year and $80 per year for the two following years. The witness also denies the making to him by Ryan of any tender of the amount due on the note and mortgage, or any other sum of money on account of the mortgage indebtedness. The foregoing is, in brief, all the evidence appearing in the record.

The point is made that the case involves a freehold and therefore that the Appellate Court had no jurisdiction. In *Sanford v. Kane*, 127 Ill. 391, we held that a freehold is involved in all cases where the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate, and also, in cases where the title to a freehold is so put

in issue by the pleadings that the decision of the case necessarily involves a decision of such issue, although the judgment or decree does not result in one party gaining and the other losing the estate. We think it clear that this case falls under neither of the two classes above mentioned. That it does not fall within the latter class is manifest from the fact that the title to the land in controversy is in no way put in issue by the pleadings.

There is no dispute that the fee, prior to the execution of the mortgage, was in Ryan. The validity of the mortgage is not assailed, there being no pretense that it was not given to secure an actual indebtedness. The defense is usury, and that defense, if sustained, would only go in reduction of the amount secured, but would not extinguish it. Nor is there any controversy as to the fact of the assignment of the mortgage to Wilkinson so as to vest in him the power of sale, nor that at the time the power was exercised, the facts existed which justified its exercise. No fault is found with the mode in which the sale was conducted, and it is not claimed that it was not effectual to vest the fee in the purchaser. The case proceeds upon the theory that the fee is in the purchaser, but that by agreement between him and Ryan, the latter has the right to redeem by paying the indebtedness, principal and interest, secured by the mortgage, whatever that may be found to be, and thus entitle himself to have the fee reconveyed to him.

Nor does the case come within the first of the two classes above mentioned. A decree in favor of Ryan would only establish his right to redeem, a right of which he might or might not avail himself. It would not therefore be a necessary result of such decree that Ryan would gain or Sanford lose the freehold. Such result would depend upon subsequent acts which Ryan might or might not perform. The case, so far as this question is concerned, comes within the rule laid down in *Kirchoff* v. *Union Mut. Life Ins. Co.* 128 Ill. 199.

In considering the case upon the merits, the only question is, whether the evidence sustains the decree. As we have said, the only evidence preserved in the record consists of the three depositions above mentioned, and there being no finding of facts in the decree there is nothing before us indicating that any other evidence was heard. The counsel for the appellee insists that, as the contrary does not appear, it will be presumed, in support of the decree, that sufficient evidence was heard to warrant it. The rule at law undoubtedly is, that where the bill of exceptions does not purport to contain all the evidence, it will be presumed that sufficient evidence was heard to warrant the verdict and judgment. In chancery, however, the rule is otherwise. There it will not be presumed that any other proof was made than what appears in the record, and that if the proof thus appearing does not sustain the decree, it will be reversed. *Linton* v. *Anglin*, 12 Ill. 283; *White* v. *Morrison*, 11 id. 361; *Nichols* v. *Thornton*, 16 id. 113; *Eaton* v. *Sanders*, 43 id. 435; *Mason* v. *Bair*, 33 id. 194; *Waugh* v. *Robbins*, id. 181; *Quigley* v. *Roberts*, 44 id. 503; *Brooks* v. *Martin*, 64 id. 389.

It may be observed, however, that, in this case, the operation of the rule above referred to is not unfavorable to the appellee. He is seeking to sustain a decree dismissing the bill, a decree which, in the absence of all evidence, was the only one which could properly have been rendered. In other words, a decree for the defendant needs no evidence to support it, and it must stand unless it affirmatively appears that there was evidence adduced by the complainant or heard at the trial which entitled him to the relief prayed for in the bill.

The three depositions above mentioned, being properly filed in the cause, are part of the record, notwithstanding the absence of a certificate of evidence. *Moss* v. *McCall*, 75 Ill. 190; *Bressler* v. *McCune*, 56 id. 475; *Ferris* v. *McClure*, 40 id. 99; *Heacock* v. *Hosmer*, 109 id. 245. As the record stands, said depositions must be deemed to be the evidence and the only

evidence adduced at the hearing, and unless it shows a right on the part of the complainant to the relief prayed for in the bill, there is no ground for disturbing the decree.

That the evidence wholly fails to sustain the bill is too plain to require extended discussion. The allegation that the transaction out of which the mortgage grew was usurious not only fails of being sustained but is clearly disproved. Trowbridge, the mortgagee, is shown to have advanced out of his own money the entire sum mentioned in the note and mortgage, and the rate of interest agreed to be paid did not exceed the rate at that time allowed by law. If the complainant paid commissions, such payments were made to his own agents, and are matters of which Trowbridge had no knowledge and with which he had no concern.

The substantial equity of the bill rests solely upon the allegation that after the sale of the lands in question under the power in the mortgage, Sanford, the purchaser, agreed to allow the complainant to redeem by paying the amount, principal and interest, due on the mortgage. Not only is there no proof of this agreement but its existence is disproved. The complainant does not testify to it, and Sanford swears that no such agreement was ever made.

There being no evidence sustaining the bill, the decree dismissing it for want of equity was properly entered, and said decree was properly affirmed by the Appellate Court. The judgment of that court will be affirmed.

*Judgment affirmed.*

Mr. Justice Baker, having passed upon this case in the Appellate Court, took no part in its decision here.