(No. 19860.

RUTH ANDERSON, Appellant, *vs.* ARTHUR ANDERSON, Appellee.

*Opinion filed April 17, 1930—Rehearing denied June 6, 1930.*

BENJAMIN H. EHRLICH, (AARON H. COHN, of counsel,) for appellant.

LEO J. HASSENAUER, and CHURCH, HAFT, ROBERTSON & CROWE, (CHARLES M. HAFT, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellant, Ruth Anderson, filed a bill in the superior court of Cook county against Arthur Anderson, her husband, for the partition of seven tracts of real estate in the city of Chicago, which will be referred to in this opinion as tracts 1 to 7, as follows: Tract 1, being two lots in West Auburn subdivision, known as 7600 South Halsted street; tract 2, two lots in S. M. Bloss & Co.'s subdivision, known as 1334 West Seventy-fourth street; tract 3, lot 48

in S. M. Bloss & Co.'s subdivision adjoining tract 2; tract 4, lot 19, block 2, in Skinner & Judd's subdivision, being 6451 Wentworth avenue; tract 5, lot 9 in Aurelia Stege's re-subdivision, being 7526 South Peoria street; tract 6, lot 133 and part of lot 132 of Bierkhoff's addition, being 8478 Vincennes avenue; tract 7, lot 345 Center Avenue addition, being 58 South Racine avenue,—all of which real estate except tract 5, which was improved with a two-flat building, was alleged to be improved with gas and oil filling stations and used in the conduct of the business of such stations and all except tract 6 was incumbered with mortgages for various amounts. The bill alleged that the defendant owned the first two tracts at the time of his marriage and was conducting a small amount of business on them; that the complainant and the defendant agreed that she should put $2000 in the business and become an equal partner with the defendant; that she did put $2000 in the business and title to tracts 1 and 2 was placed in her and the defendant jointly; that the complainant thereupon took over the active management of the office work, taking charge of all the business being transacted and conducted, leaving the defendant to manage and conduct the hauling of gasoline and oils and wholesale business to other gasoline stations until the parties separated, June 15, 1928. The bill further alleged that the complainant and the defendant afterward acquired tract 4 and tract 7 as tenants in common and tracts 5 and 6 as joint tenants; that on June 15 the defendant left the complainant and has not lived with her since; that he has neglected the business and failed to pay creditors who are pressing the complainant for the payment of bills, which she is unable to pay because the defendant has drawn all money from the bank; that on July 16, 1927, the complainant and the defendant signed a note for $7500 secured by trust deed, so that the defendant might from time to time withdraw up to the sum of $7500 under a loan agreement, and that he has already drawn

$5000 for the purpose of applying that sum to the conduct of the business but is diverting the same to his own use and has applied to his own use large sums of money from the receipts of the business greatly exceeding his proportion of the same. In addition to the prayer for partition the bill prayed for a dissolution of the partnership, an accounting, an injunction and the appointment of a receiver.

The defendant, Arthur Anderson, answered, admitting the marriage and his ownership at that time of tracts 1 and 2; denying the partnership or any agreement for one, or that complainant put $2000 in the business or took over the management of the office work of the business. The answer denied that the complainant and the defendant are owners in joint tenancy of any of the real estate mentioned in the bill, and averred that the complainant conspired with one Roberts, who she knew was accustomed to advise the defendant in his business affairs, to induce him to advise the defendant that it would be necessary for him to place the real estate in the name of the complainant and the defendant as joint tenants in order to obtain a loan thereon, and that Roberts did accordingly advise the defendant, and the defendant did thereupon cause the title to the real estate described in the amended bill to be placed in the complainant and the defendant as joint tenants, but that the title so placed in the complainant was procured by fraud and circumvention and was without any consideration whatsoever and was void and of no force and effect, as would appear more fully from a cross-bill which the defendant would presently file. The defendant then filed a cross-bill, in which he asked for a divorce on the ground of cruelty, and, among other things, alleged in regard to the real estate that shortly after the marriage his wife learned that he proposed to place a mortgage upon one of the pieces of property owned by him, and, knowing Roy P. Roberts was consulted by Arthur concerning his business affairs, entered into a conspiracy with Roberts to deprive Arthur of a half

interest in all of his real estate and to procure the same for herself, and induced Roberts, in furtherance of the conspiracy, to represent to cross-complainant that he could not, so long as he was married, mortgage his real estate unless he would cause it to be so conveyed as to be held in joint tenancy by him and the cross-defendant, and Roberts did accordingly advise Arthur, and he having confidence in Roberts and not knowing the falsity of his representations, thereafter, and without any consideration moving to him, caused the title to be placed in the complainant and himself either in joint tenancy or tenancy in common, in and to all the property mentioned in the bill except tracts 3 and 5. The cross-bill further alleges that the cross-complainant did not intend to make his wife a gift of any interest in any of the properties mentioned but caused the title to be placed as alleged for the sole purpose of enabling him to incumber said properties, and that therefore the title held by his wife is held not in her own right but solely as trustee for the use and benefit of the cross-complainant. The cross-bill further represents that the cross-complainant, desiring to expand his holdings, placed it within the power of Ruth to obtain his funds, to acquire title to tract 3, and without his knowledge or consent she acquired title thereto in her own name, and by reason thereof holds the title not in her own right but as trustee for the sole use and benefit of Arthur.

Carrie Olson by leave of the court filed an intervening petition, which, as afterward amended, alleged that she was the mother of Arthur Anderson; that Otto Olson, her son and half-brother of Arthur, furnished to Arthur the sum of $2500 in payment for a half interest in tracts 1 and 2, which Arthur was then in the process of acquiring title to and title to which he did thereafter acquire, with the understanding that Arthur would acquire and hold title thereto for the joint and equal interest of himself and Otto; that Otto died on May 30, 1923, leaving his mother, his father,

Arthur, his half-brother, Luther Olson, his brother, and two sisters, his only heirs, who, shortly after his death on June 10, 1923, assigned to the petitioner, Carrie Olson, all their interest in the estate of Otto, by reason of which she became the owner of an undivided half interest in the property.

Answers were filed by the original complainant to the cross-bill and the intervening petition. The cause was heard by the court and a decree rendered finding that no partnership ever existed between the complainant and Arthur Anderson; that at the time of his marriage to Ruth, Arthur was the owner in fee simple of tract 1 and had contracted to buy tract 2, the title to which he acquired soon after his marriage, all subject to the rights of Otto Olson; that prior to August 15, 1923, Roy P. Roberts, president of the bank at which Arthur did his banking business, was applied to, as the representative of the bank, by Arthur for a loan upon his real estate; that Roberts fraudulently advised Arthur that a loan on the real estate would not be legal unless he placed the title in himself and the complainant jointly, but that the evidence does not connect the complainant with fraud; that Arthur believing Roberts' statement to be true, for the sole purpose of having the title to tracts 1 and 2 held by the complainant and himself jointly in order that a mortgage thereon might be legal and not intending to make a gift to the complainant of an interest in the property, caused those tracts to be conveyed to Leonard C. Mattson and by Mattson to Ruth and Arthur in joint tenancy; that at various times afterward Arthur purchased, out of funds that were entirely his own, tracts 4, 6 and 7, and, still believing Roberts' statement to him that title to the property must be in the joint names of complainant and himself in order that he might at any time thereafter obtain a loan thereon, he caused title to be taken in the joint names of the complainant and himself, but he did not intend to make a gift to the complainant of any interest in the prop-

erty; that afterward, desiring to acquire an additional lot next to tract 2, Arthur requested the complainant to draw a check upon his bank account for a sufficient amount to acquire title to tract 3, but the complainant, without the knowledge or consent of Arthur, took title to the tract in her own name. The court further found that Arthur had at all times, and with the full knowledge of the complainant and without any objection on her part, used, occupied and dealt with all the properties mentioned as his own, and that all the title which stands in the name of the complainant to all the property described is not held by the complainant in her own right but is held in trust for the sole use and benefit of Arthur. The court further found that on September 23, 1925, Ruth and Arthur purchased with funds belonging to each of them tract 5, placed the title thereto in themselves as joint tenants, and their several interests therein are in proportion to the amounts severally invested by them in the property, and the complainant is entitled to partition thereof but is not entitled to partition of any of the other property described in the bill. The court further found that on October 9, 1924, the complainant loaned to Arthur $1000 and on April 18, 1925, another $1000, on which sums Arthur paid six per cent interest to January 1, 1928, and Ruth is entitled to recover from Arthur $2000, together with six per cent per annum interest from January 1, 1928. The court further found that in the early part of 1922 Arthur and his half-brother, Otto Olson, entered into an agreement whereby Otto was to pay Arthur the sum of $2500 for a half interest in tracts 1 and 2 and a half interest in and to the gasoline business then being conducted by Arthur; that Otto about the same time paid Arthur $2500, and thereby became entitled to receive from Arthur a conveyance of the half interest in tracts 1 and 2 and in the gasoline business then conducted by Arthur; that Otto died on May 30, 1923, leaving his mother, brothers and sisters, who have conveyed to Carrie Olson all their

interest in Otto's estate, and by reason thereof she is entitled to receive from Arthur a conveyance of a half interest in tracts 1 and 2 and a half interest in the gasoline business conducted by Arthur in the early part of 1923. Based on these findings, the court decreed that tract 5 be divided between the complainant and Arthur in the proportion of the amount of money that they have respectively expended upon and invested in the premises, and that if the complainant and Arthur cannot agree in that particular the question be referred to a master in chancery, and the court reserves jurisdiction over the cause until such time as a partition of the property between them has been accomplished. It was further decreed that the complainant had no right, title or interest in or to any of the other property in her bill of complaint as amended described, save her contingent right of dower, and that she do not, therefore, have partition thereof. It was further decreed that no partnership exists or existed between the complainant and the defendant and the complainant take nothing by reason of the alleged co-partnership; that the complainant recover of the defendant $2000, with interest from January 1, 1928, at six per cent per annum; that while the evidence shows that the defendant was justified in leaving the complainant and living separate and apart from her, he has failed to prove such extreme and repeated cruelty as to entitle him to a divorce, and that the prayer of his cross-bill, so far as pertains to a dissolution of the bonds of matrimony, be denied; that the defendant convey to the intervening petitioner, Carrie Olson, one-half interest in tracts 1 and 2 and account to her for the profits arising out of the conduct by him of the business which he has conducted on the premises.

The transcript of the record contains no depositions, no report of the master and no certificate of evidence. The validity of the decree therefore depends upon the sufficiency of its findings of fact to support it. There is no presumption in aid of a decree in chancery, such as prevails in sup-

port of a judgment at law, that evidence sufficient to sustain the decree but not appearing in the record was heard by the court. To sustain in an appellate court a decree granting affirmative relief, the party in whose favor it has been rendered must preserve in the record the evidence on which it is based or the decree must find the specific facts proved on the hearing. (*Timke* v. *Allen,* 225 Ill. 402; *Buettner* v. *Glos,* 240 id. 9; *VanMeter* v. *Malchef,* 276 id. 451; *Franco-American Hygienic Co.* v. *City of Chicago,* 329 id. 585.) Where, however, a decree dismisses a bill for lack of evidence or refuses to sustain a defense because of a failure of evidence in behalf of the party having the burden of proof, the decree must stand unless it affirmatively appears that evidence adduced by the complainant or heard at the trial required a different result. Such a decree needs no evidence to support it. (*Ryan* v. *Sanford,* 133 Ill. 291; *First Nat. Bank* v. *Baker,* 161 id. 281; *Kelly* v. *Funkhouser,* 171 id. 205; *Lyons* v. *Lyons,* 272 id. 329.) The part of the decree finding no partnership between the complainant and her husband and ordering that she take nothing by her bill by reason of the alleged partnership must be affirmed. This part of the decree requires no evidence to sustain it, for the party upon whom rests the burden of proof must always fail if no evidence is produced.

It is contended on behalf of the appellant that the finding of the court that no partnership exists or existed between the complainant and the defendant, Arthur Anderson, is a mere conclusion of law and cannot be considered a finding of fact. The argument is that the bill alleges facts showing that a partnership existed which usually attend the formation and existence of a partnership, as, entering into business and becoming co-workers, the banking of money received in the conduct of the business in the name of the complainant and the defendant jointly. There is no finding as to whether or not an agreement, verbal or written, was made between the parties, whether the par-

ties formed a relation of partnership by operation of law or otherwise, whether the parties held themselves out as partners, or whether there was a partnership relation predicated on any of the methods by which partnership relations come into existence. These facts mentioned in the appellant's briefs are cogent circumstances whose absence or presence may tend to prove or disprove the existence of a partnership but the decree need not recite all the evidentiary facts in the record. It is sufficient to find the ultimate facts justifying the relief granted. A general finding of the ultimate facts is enough, and it is not necessary to find minutely all the subsidiary facts which tend to prove the ultimate fact. (*Koch* v. *Arnold*, 242 Ill. 208; *Cobe* v. *Bartlett*, 270 id. 61; *Stevenson* v. *Earling*, 290 id. 565; *Chicago Title and Trust Co.* v. *Ward*, 332 id. 126.) Furthermore, the appellant, to entitle her to an accounting, has the burden of proving her right to an accounting—that is, that she was a partner with Arthur—and she must fail unless the evidence affirmatively showing the existence of the partnership is preserved in the record.

The court found that Ruth and Arthur Anderson purchased tract 5 with funds belonging to each of them and had the title placed in them as joint tenants, and by reason thereof their several interests therein are in proportion to the amounts severally invested by them, and the complainant is entitled to partition of it. It was therefore decreed that tract 5 be divided between them in the proportion of the amount of money they have respectively expended upon and invested in the premises, and if they cannot agree between themselves in that particular the question be referred to a master in chancery. This part of the decree is assigned for error, and the assignment must be sustained. If the husband's contribution exceeded the wife's the presumption is that he intended a gift to her. No finding of the decree rebuts that presumption. The cross-bill as amended made no allegation and asked no relief as to this lot and

the complainant in the original bill claimed only as a joint tenant. The decree erred in not finding the husband and wife to be joint tenants and their interests to be equal.

The appellee's claim for relief in regard to the other tracts except tract 3, as charged in his cross-bill, is based upon fraud, by which he was induced to cause the title to those tracts which he either owned himself or bought with his own money to be transferred to himself and his wife in joint tenancy. The allegations of the amended cross-bill in regard to this fraud are the following: "Your orator represents at time of marriage he was engaged in business of oils and gasoline in retail and wholesale; that upon marriage he furnished an apartment in which parties resided, expecting that he and cross-defendant would enjoy the apartment as home, nevertheless cross-defendant declined to prepare meals except on occasions and insisted on dining out; that cross-defendant stated she proposed to be a great help to him in his business inasmuch as she was not attending to her household duties and she would take charge of the books and assist in business, and she proceeded accordingly, thereby obtaining full knowledge of all business and affairs of your orator; that shortly thereafter cross-defendant learned that your orator proposed to place a mortgage upon one of the pieces of property owned by him, and knowing Roy P. Roberts was consulted by your orator concerning his business affairs, said cross-defendant entered into a conspiracy with said Roberts to deprive your orator of a half interest in all of his real estate and to procure the same for said cross-defendant, and induced Roberts, in furtherance of said conspiracy, to represent to your orator that he could not, so long as he was married, mortgage his real estate unless he would cause said real estate to be so conveyed as to be held jointly by your orator and said cross-defendant, and thereupon said Roberts did accordingly advise your orator, and your orator having confidence in said Roberts and not knowing the falsity of his representations

made to your orator, that your orator did thereafter and without any consideration whatsoever moving to him in that behalf from any source whatsoever, cause the title to be placed in the complainant and your orator either in joint tenancy or tenancy in common in and to" the various tracts except 3 and 5.

Having voluntarily caused the property to be conveyed in joint tenancy to his wife and himself the defendant could get it back only by alleging and proving facts which a court of equity would recognize as giving him a right to its return. He undertook to allege a constructive trust arising out of the conspiracy between his wife and Roberts to deceive him into believing that he could not give a mortgage to secure a loan on his own property in any other way than by transferring the title so that it should be held by himself and his wife in joint tenancy, and this, after she had obtained full knowledge of all his business and affairs, for the purpose of depriving him of a half interest in all his real estate and to procure it for herself. These allegations may have been sufficient to show a constructive trust but they are not sustained by any evidence or the findings of the court. There is no finding of any conspiracy, and the only finding on the subject is that Roberts fraudulently advised Arthur that the loan on the real estate would not be legal unless the title was transferred to him and his wife jointly. Fraud can be alleged or proved only by allegation or proof of the facts constituting the fraud. "Fraudulently" does not allege anything. It is a mere expletive—a word of abuse. If it should be thought to make any charge it would not be against the appellant. Neither is the complainant's name mentioned nor her connection with any act or word of Roberts even remotely suggested in any finding, but the court expressly finds that the evidence does not connect her with the fraud. The extent of the allegation or the finding is only that Arthur was badly advised. Acting on the erroneous advice he placed the title

in his wife and himself in joint tenancy. Whatever may have been his intention it could not control the legal effect of the conveyance, which was to vest an estate in joint tenancy in his wife and himself. There is, therefore, no basis in the record for the decree that the complainant has no right, title or interest in any of the other property described in the bill than tract 5 except her contingent right of dower, and is not entitled to partition thereof.

The appellee contends that this part of the decree has its basis in the determination of the issue made by the original bill and Anderson's answer; that it is responsive to the issues raised by these pleadings and needs no evidence to support it. This position is untenable. The complainant's bill stated a case showing the joint title in her husband and herself and praying for the partition of the real estate. The defendant's answer admitted the facts showing the placing of the title in himself and the complainant jointly, and these pleadings showed that the title of the property was such as to entitle the complainant to a partition of the premises. It is true section 15 of the Partition act provides that the court shall ascertain and declare the rights, title and interest of all the parties to such suit, the petitioners as well as the defendants, and shall give judgment according to the rights of the parties. But this does not do away with the necessity of pleading. The defendant, recognizing the necessity to the proper presentation of his case for a reformation of the title, filed his cross-bill presenting the circumstances under which the title had been placed in the complainant and praying that he might be decreed to be the sole owner of the real estate and the complainant be required to execute a quit-claim deed to him and be barred and foreclosed of all right, title and interest in the property. A cross-bill was necessary to the presentation of these issues and the granting of this relief. The cause was submitted on these issues, which were determined, and the affirmative relief prayed was granted to the com-

plainant in the cross-bill. A preservation of the evidence is necessary to sustain such a decree upon appeal.

The appellant argues that the court erred in decreeing that Arthur Anderson convey to Carrie Olson a half interest in tracts 1 and 2 and account to her for the profits arising from his conduct of the business on those premises. The appellee contends that the decree is against him alone, and the appellant, being unaffected by this part of the decree, cannot assign error on it. The appellant and her husband were joint tenants in tracts 1 and 2. Either had the right to convey half of the premises, and such conveyance would cause a severance of the tenancy and make the grantee a tenant in common with the tenant not joining in the conveyance. Either joint tenant could contract to convey his interest in the premises and the contract might be enforced against him. This, also, would result in a severance. The effect of such conveyance, voluntary or involuntary, would be to create a tenancy in common of the grantee and the other joint tenant. So long as the joint tenant whose interest is to be conveyed by operation of the decree and who may himself convey it of his own will is satisfied with the decree another joint tenant has no cause of complaint and cannot assign error. She has the same interest after as before the decree.

The finding and decree of the court that the defendant, Anderson, was justified in leaving the appellant and living separate and apart from her are erroneous. No such issue was presented in the pleadings, which concerned only the question whether or not the appellant was guilty of extreme and repeated cruelty to her husband, and on that question the court found the charge not sustained by the evidence.

The decree, so far as it orders the conveyance by Arthur Anderson of a half interest in tracts 1 and 2 to Carrie Olson, together with an accounting by him with her, and so far as it decrees that no partnership exists or existed between the appellant and Arthur and that the appellant take

nothing by reason of the alleged partnership, and so far as it decrees that the appellant recover of Arthur $2000, with interest from January 1, 1928, and so far as it decrees that the appellant has no right, title or interest in tract 3, is affirmed; and so far as it decrees that tract 5 be divided between the appellant and Arthur in the proportion of the amount of money they have respectively expended upon and invested in the premises and if they can not agree in that particular the question be referred to a master in chancery, and so far as it decrees that the appellant has not any right, title or interest in or to tracts 1, 2, 4, 6 and 7, it is reversed and the cause is remanded to the superior court, with directions to modify the decree by ordering the partition of tracts 4, 5, 6 and 7 between the appellant, Ruth Anderson, and the appellee, Arthur Anderson, in equal shares, and by dividing tracts 1 and 2 between appellant and the petitioner, Carrie Olson, in equal parts and proceeding in such partition according to law, and by striking out of that portion of the decree which reads, "It is further ordered, adjudged and decreed that while the evidence shows that the defendant, Arthur Anderson, was justified in leaving the complainant and living separate and apart from her, the defendant has failed to prove such extreme and repeated cruelty as * * * to entitle him to a decree of divorce," the words, "while the evidence shows that the defendant, Arthur Anderson, was justified in leaving the complainant and living separate and apart from her." The appellant will recover her costs against the appellee, Arthur Anderson, and the petitioner, Carrie Olson, will recover her costs against the appellant.

*Reversed in part and remanded, with directions.*